GEO. W. MICHAEL v. ALEXANDER FOIL.

*Evidence—Statute of Frauds—Attorney at Law; privileged communications—Judge's Charge—Reasonable Time.*

1. At the time of the delivery of a deed for land, and as part of the inducement for its execution, it was orally agreed between the vendor and vendee, that if the vendee should sell the mineral interest in the land during vendor's life, he would pay the vendor one-half of the amount received therefor ; *Held*, that such agreement could be shown by oral evidence, and did not come within the statute of frauds.

2. Where an attorney at law acts in his professional capacity for several parties, in the same transaction, he cannot testify as to what transpired as between such parties and a third person, unless all the parties for whom he acted consent; but as between the parties themselves, he can testify to all that was said and done.

3. It is not the duty of the Judge to charge the jury upon a single selected fact, nor is he bound to charge in the language asked for in a special instruction.

4. The doctrine of reasonable time applies when no time is specified in the agreement of the parties. Where defendant promised to pay plaintiff one half the proceeds of a mineral interest in land if sold during plaintiff's life, a shorter time will not be fixed by the law. The plaintiff's life is the time fixed by the agreement, and the law will not change it.

CIVIL ACTION, tried before *Connor, J.,* at January Term, 1888, of the Superior Court of CABARRUS County. Defendant appealed.

1. The plaintiff alleged that in 1881 he conveyed, by deed in fee, to the defendant a tract of land mentioned in the complaint, for the sum of $5,000.

2. That at the time of the execution of the deed, and before, it was contracted and agreed that the plaintiff would take $5,000 for the land, provided the defendant would pay to him one half of the proceeds for which the mineral interests of said land should be sold, if the defendant, during his life-time, should sell said mineral interests; the defendant agreed to these terms, and the deed was executed, without embracing them, but subject to them.

3. That in 1883, the defendant sold the land and mineral interests to W. H. Orchard for $6,000, and received the money therefor—the mineral interests for $1,000, and the land for $5,000.

The plaintiff demanded of the defendant the one half of the proceeds of the sale of the mineral interests, which was refused, and this action is brought to recover it.

The defendant admits the purchase of the land by him at the price of $5,000, but denies the other allegations.

The following issues were submitted to the jury without objection:

"1. Did the plaintiff and defendant contract before and at the time of the execution of the deed from the plaintiff to the defendant, the deed being made subject to the contract, that plaintiff should take $5,000 for the land, and the defendant would pay plaintiff one half of the proceeds for which the mineral interests in said land should be sold, if defendant should, during his life-time, sell said mineral interests?

2. Did the defendant, on or about the 11th day of April, 1883, sell the mineral interests; and if so, what was the price paid therefor?

3. What sum of money, if any, is due from the defendant to the plaintiff;

George W. Michael, the plaintiff, was introduced in his own behalf, and testified:

"I sold the land to the defendant March 15, 1881, for five thousand dollars."

The plaintiff's counsel then proposed to ask the witness the following questions:

" Was there any agreement made at the time, in respect to the proceeds of the sale of the mineral interests in the lands, which was not embraced in the deed?"

Answer.  " There was."

" Was such agreement in writing?"

Answer.  "It was not."

" What were the terms of said agreement?"

Defendant objected, for that the agreement proposed to be proven, was concerning an interest in land, and could only be shown by some writing, signed by the defendant.

Objection overruled.   Exception by defendant.

"The agreement was, that I was to have one half of the proceeds of the sale of the mineral interests in the land, if sold during my life-time."

"The agreement was made in Mr. Puryear's office. He drew the paper. I paid him for it. On the same day, and after the deed was made, the defendant said that he would attend to the sale. We agreed that Mr. Richards should go and show the mine to any person who might wish to buy. I received a letter from Mr. Richards about the sale. After I heard that defendant had sold, I came to North Carolina, and demanded pay for my share of the proceeds of the mineral interests. The defendant declined to pay it. I told him that he knew that it was a fair contract. He said he only got one thousand dollars for the mineral interests. He sold to Captain Orchard. He said that he never would pay me; that he would keep it in Court as long as he lived. The agreement was, that Richards and Foil were to sell for our benefit."

The plaintiff's counsel then proposed to read a letter from Richards to plaintiff, and Richards was called, and testified that he signed the letter, and Foil, the defendant, wrote it.

The defendant objected. Objection overruled. Defendant excepted.

The following letter was then read, for the purpose of corroborating the witness:

"CONCORD, NORTH CAROLINA, May 21, 1881.

"*Mr. George W. Michael,*

"Dear Sir:—I mailed you a letter some three weeks ago, as to selling the mining property on Foil's plantation, and have not received an answer yet, nor has Mr. Foil. I directed your letter to Ashboro, Illinois, so I write again. If you want to sell your interest, I am of the opinion you can do so if you offer it at a low price. I think Mr. Foil is out of pa-

tience, as well as myself, as you have not written to either of us. Our plan is to make hay while the sun shines. Several parties have been here, and will not consider any sale until I hear from you. Have a speedy answer, or all be go-by. Put your price low down, if you want to sell—no mistake. Foil is ready to sell at any price to make a sale. Let me know your price, at a low rate, at that. With my best wishes to you and family, I remain

Yours truly,

WILLIAM RICHARDS.

"Direct your letter: William Richards, Concord, N. C., care of A. Foil."

Mr. Hal Puryear was then introduced by the plaintiff, and testified :

" I drew a deed for the plaintiff to the defendant. It was drawn in my office. The first time I heard of the matter, Mr. Foil met me and said that he was about to buy some land from Michael; that they wanted me to draw the deed. They came to my office, and I did so. Mr. Michael paid me."

The plaintiff then proposed to ask the witness:

" What took place between the parties at that time, in your presence ?"

The defendant objected, for that the witness, an attorney at law, was in the employment either of himself, or the plaintiff and himself, and that the conversation in his presence was, as to him, confidential.

The objection was overruled. Defendant excepted.

"I heard the parties say, that when the land was sold the plaintiff was to have one half of the proceeds of the sale of the mineral interest. This is impressed on my memory. I heard it twice. That was their agreement. Michael wanted to retain one half of the mineral interest, and insert a reser-

vation to that effect in the deed. This was objected to by Foil. I then suggested a collateral agreement in writing, and wrote it. Foil refused to sign it. The agreement was in parol, that Michael was to have one half of the proceeds of the sale of the mineral interest."

The plaintiff then put in evidence the bond for title from the defendant Foil to W. H. Orchard, for the mineral interest in said land, dated April 2d, 1883, by the terms of which he was to convey to said Orchard the mineral interests, with the timber on twenty-five acres, and other privileges not material to be stated, for the sum of $1,000. On the bond is the following endorsement:

Received of William Treloar the sum of one thousand dollars, for one half interest in the within bond and a second bond covering the mineral interest of said tract, the said bond bearing even date with this instrument.

April 2d, 1883.            W. H. ORCHARD.

On the payment of one thousand dollars more, I agree to transfer all of my right, title and interest in the within bond, as well as the bond mentioned above.

April 2d, 1883.            W. H. ORCHARD.

The plaintiff then put in evidence the bond for title to the said land from the defendant, Foil, to Orchard, dated April 2d, 1883, in which he enters into the obligation to convey the land to the said Orchard in fee, for the sum of $6,000.

The plaintiff then introduced a deed from Foil and wife to W. H. Orchard, dated April 18th, 1883, conveying to the latter the land in fee for the consideration named therein of $6,000.

He then offered in evidence a deed from himself and wife to the defendant, Foil, dated December 27th, 1880, conveying to him the said land in fee, for the consideration named

therein of $5,000, "to have and to hold three fifths of said land to him, said party of the second part, and his heirs, as trustee for Nancy E. Melchor, and the other two fifths to him, the said Foil, and his heirs."

The defendant then testified, in his own behalf, as follows:

"The plaintiff came to me and offered to sell his land. Said that he wanted to leave the State. Something was said about a gold mine. He charged five thousand dollars for the land. I declined to take it, but offered four thousand dollars and permit him to retain four acres and a right of way to the mine. He finally agreed to rent the land for that year and pay me nine bales of cotton rent, and I agreed to give five thousand dollars for it. Mr. Puryear wrote the deed. I employed him to write it. Michael wanted to insert a reservation of one half of the mineral interest. I declined to permit it; but told him that he was to open the mine and have half of what he got from the sale of the mineral interest. I did not agree with him to give him one half of the proceeds of the sale of the mineral interest. Orchard never paid me anything for the mineral interest. He paid me for the plantation. I made some improvements on the land, amounting to about one hundred and seventy dollars. When I sold, there was a crop on it—wheat, &c.,— worth about seven hundred dollars. My interest was about one third."

Cross-examined, he said:

"I have no recollection that Mr. Puryear, at the time of writing the deed, suggested that the reservation be put in the deed. I do not think Michael was present. He and his wife signed the deed the day that it was written. When I sold the land to Orchard I had been in possession two years. The first year I got about four hundred or four hundred and fifty dollars rent for it. The improvements were put on the land before I sold to W. H. Orchard. I put some after I made the bond to Orchard. Mr. McDonald came to me and

wanted a bond. I refused to give it. I told him that I had promised Michael that if he opened up the mine he was to have one half of it; that he had a chance on it. I wrote the letter, in evidence, at Mr. Richards' suggestion. I sold the farm to Orchard. I claim no interest there now. I considered the mineral interest worthless. I made a bond to Orchard, to sell it to him for two thousand dollars."

The plaintiff then introduced William Richards, who testified:

"Some time after Michael left I came to town to see Mr. Foil, to ascertain what he would take for the mineral interest. He said that he could not sell without Michael's consent; that he owned one half interest. I told him that could be easily fixed; that we could write Michael. He then wrote the letter in evidence and I signed it. When Orchard bought, I asked defendant if he had sold the mineral interest, and he said yes."

It was conceded that both of the bonds from defendant to W. H. Orchard came from the custody of Mr. Treloar.

The defendant requested the Court to instruct the jury:

1. That the agreement alleged by plaintiff and shown by his testimony, even if made, is void by reason of the same not being in writing, signed by defendant or some agent of his.

2. That it being admitted that the four thousand dollar bond to Orchard had never been surrendered, being executed at the same time as the other bond to Orchard, they should be construed together as forming one transaction, and the proper construction of the whole transaction is, that the equitable, if not legal, title to the mineral interest remains in defendant, and therefore the plaintiff cannot recover.

3. That, even viewed as distinct instruments, the effect of the deed from the defendant to Orchard was not a sale within

the true intent and meaning of the parol agreement, as testified to by plaintiff and his witnesses.

4. That if a sale of the mineral interest was even agreed to be effected for the joint benefit of plaintiff and defendant, such authority is confined to an execution within a reasonable time, and that two years was not a reasonable time, and that such agreement had ceased to be of effect on the first day of April, 1883.

5. That the agreement, even according to plaintiff's testimony, is without consideration, and therefore the jury should respond to the first issue—No.

6. That by the bonds for title, introduced by plaintiff and executed by defendant to Orchard, and by the assignment of said bonds by Orchard to Treloar, there was in equity a conveyance of all the mineral interest to Treloar, and the deed from defendant to Orchard being made subsequent to the execution of these bonds, must be construed in the light of and in connection with the bonds.

And it appearing that these bonds for title were never surrendered by Treloar to the defendant, there was no estate in the mineral interest conveyed by the deed. Up to this time, then, the contract to sell the mineral interest is executory only, and there are no " proceeds of sale " of the mineral interest from which the plaintiff can recover.

All of which were refused by the Court.

The defendant also asked the following instruction, which was given:

" If the jury shall find from the testimony that the contract, if any, was that the defendant agreed to allow the plaintiff, Michael, to have half of the mineral interest itself in the land specified in the complaint, the jury should respond to the first issue—No."

The Court then instructed the jury, that the burden of proof being on the plaintiff, they must be satisfied by a preponderance of testimony that the contract, if any, made by

the defendant was as alleged, otherwise they should answer the first issue in the negative.

That as to the second issue, the burden was on the plaintiff to show that the defendant had made sale of the mineral interest and received the money therefor; that a sale of the land alone would not entitle the plaintiff to recover. That they might consider all of the evidence, including the bonds put in evidence, and say whether the defendant had sold the mineral interest and received the money therefor, and if so, what amount.

That as to the third issue, if they found the two first for the plaintiff, he would be entitled to one half of the amount received by the defendant for the mineral interest, with interest from January 12, 1884.

Motion by defendant for new trial, for error in refusing instructions asked, and for admitting testimony objected to.

Motion denied, and appeal.

*Messrs. B. F. Long* and *W. G. Means,* for the plaintiff.
*Mr. W. H. Bailey,* for the defendant.

DAVIS, J., (after stating the facts). 1. The first exception was to the admissibility of the testimony of Michael, to prove the agreement in parol, in regard to the proceeds of the sale of the mineral interest in the land.

The contract for the sale of the land was in writing—the land itself was sold—but the agreement, that if the mineral interest in the land should be sold during the life-time of the plaintiff, he should have one half of it, was not put in writing. If the contract of sale was made subject to this agreement, as an inducement to the contract, the agreement, though in parol, may be enforced. The agreement did not pass, or purport to pass, any interest in land, and does not fall within the statute of frauds.

In *Manning* v. *Jones*, Busb., 368, Jones contracted to sell Manning a tract of land at a stipulated price.   It was, at the same time, agreed that the defendant, Jones, should repair the plantation and houses by a day named.   The deed was executed and delivered to Manning, and, at the time of the delivery of the deed, Jones said he would have the repairs made by the time specified.   Having failed to do so, the plaintiff brought an action to recover on the contract.

The Court below held that parol evidence was inadmissible.   NASH, C. J., said: " In this there is error.   It is true, as a rule of evidence, that where a contract is reduced to writing, parol evidence cannot be received to contradict, add to, or explain it.

The error consists in considering the evidence in this case as offered for either of these purposes.   It was offered to set up another and distinct part of the contract, which never was reduced to writing; a contract which was ancillary to the main one, which was the sale and purchase of the land. *   *   *   *   As soon as the deed was delivered   *   *   *   * the title passed   *   *   *   * unclogged with any conditions whatever; but it did not have the effect to discharge Jones from his obligation to put on the premises the agreed repairs.   And as the contract was in parol, it might be proved by parol.   Its existence added no new covenant to the deed, *   *   *   nor did it contradict or explain any one that was contained in it.

The action is maintainable upon the contract, as to the repairs made at the time the deed was delivered."

In *Trowbridge* v. *Wetherbee*, 11 Allen's Mass. Rep., 361, it is said that a parol promise to pay to another a portion of the profits made by a promissor on the purchase and sale of real estate, is not within the statute of frauds, and may be proved by parol.   See also *Sherrill* v. *Hagan*, 92 N. C., 345.

2. The second exception was to the evidence of Richards, in regard to the letter written by Foil to the plaintiff, but

signed by Richards. It was competent as corroborating Michael, and also as tending to show the fact, that Foil, after the deed from Michael to him, recognized the latter as interested in the sale of the mineral interest.

3. The defendant objected to the competency of Puryear, because he was an attorney, and " was in the employment either of himself, or the plaintiff and himself," and the conversation was, therefore, confidential and privileged.

It is not denied by the plaintiff, that if Puryear had been counsel for the defendant alone, his testimony would have been incompetent, but it is insisted, and we think it so appears, that he was counsel for the plaintiff, who alone paid the fee, and if so, the communication was privileged only as to him, and could be removed by his consent. 1 Greenleaf's Evidence, § 243.

But conceding that the witness was the attorney of both the plaintiff and defendant, (there is nothing to show that he was the attorney for the defendant alone,) as between the counsel and the plaintiff and the defendant, the matter was not, in its nature, private and confidential; it was common to all three, " and could, in no sense, be termed the subject of a confidential disclosure." 1 Greenleaf Ev., § 244.

The learned counsel for the defendant says, that if an attorney acts for several clients, he cannot testify without the consent of all, and for this he cites several authorities. This is undoubtedly true, as between his clients, or any one of them, and third parties; " but a communication made to counsel, by two defendants, is not privileged from· disclosure in a subsequent suit between the two."

We are not aware that the question, in its present form, has ever been before the Courts of this State, but in *Rice* v. *Rice*, 2 B. Monroe, 417, referred to in Greenleaf, it was directly before the Court, and after laying down the general rule, that a legal adviser will not be permitted to disclose communications or information derived from clients, as such, it is said :

" But does this rule apply in this case? Here the controversy is between the parties themselves, and the attorney is under the same obligations to both of them. The matter communicated was not, in its nature, private, as between these parties, who were both present at the time, and consequently, so far as they are concerned, it cannot, in any sense, be deemed the subject of a confidential communication made by one, which the duty of the attorney prohibited him from disclosing to the other. The reason of the rule has no application in such case. The statements of parties made in the presence of each other may be proved by their attorneys, as well as by other persons, because such statements are not, in their nature, confidential, and cannot be regarded as privileged communications. The testimony of the attorney was, therefore, properly admitted in this case."

This reasoning seems to be sound, and so we say, in the present case, the testimony was properly admitted.

4. The fourth exception is to the refusal of the Court to instruct the jury, that the alleged agreement was void because not in writing. This exception cannot be sustained, for the reason assigned for overruling the 1st exception to the evidence. If it had been an agreement to sell any interest in the land, or if, as his Honor charged, it was that the plaintiff should " have half the mineral interest itself in the land specified," it would have been otherwise.

5. Even if the two bonds be taken together, and construed as one transaction, his Honor instructed the jury, " That they might consider all of the evidence, including the bonds put in evidence, and say whether the defendant had sold the mineral interest, and received the money therefor; and if so, what amount?" and this was a compliance with the plaintiff's prayer, as far as he was entitled to it. It was a correct enunciation of the law, as applicable to all facts as the jury should find from the evidence.

It is not the duty of the Court to charge the jury upon a single selected fact, nor is he bound to give the charge in the language asked for. *Wilson* v. *White,* 80 N. C., 280; *Rencher* v. *Wynne,* 86 N. C., 268; *State* v. *Boon,* 82 N. C., 637; *Clements* v. *Rogers,* 95 N. C., 248.

6. The refusal to give the third instruction, as asked for, is disposed of with the last.

7. The refusal to instruct the jury that, admitting the agreement, the sale must be effected within a reasonable time, was not error. The doctrine of reasonable time applies when no time is specified.

When stated in the agreement, why should it be limited to a shorter time?

8. The sale and conveyance of the land constituted a consideration for the agreement. *Manning* v. *Jones, supra; Sherrill* v. *Hagan, supra.*

This disposes of the exception to the refusal to give the 5th prayer.

9. The 6th prayer, for instruction to the jury, is disposed of with the exception to the refusal to give the 2d and 3d. It was substantially given, as far as the defendant was entitled to it.

There is no error. Affirmed.