*W. D. SPRAGUE v. L. N. BOND et al.

*Contract — Statute of Frauds — Trust — Consideration.*

1. S. being the owner of certain lands, conveyed them by deed absolute to B. upon the parol promise of the latter that from the proceeds of any sale the vendee might make, after paying expenses, etc., the vendor should be paid a part: *Held*, not to be within the statute of frauds.

2. While such agreement constitutes no trust, nor passes any interest in the land itself, and while equity would not compel a sale by the vendee, yet where the latter makes a voluntary sale the vendor has the right to call for an account, and to recover his share of proceeds under the agreement.

This was a CIVIL ACTION, tried at Spring Term, 1891, of the Superior Court of CALDWELL, before *Hoke, J.*

The plaintiff was introduced as a witness in his own behalf, and testified, after defendant's objection, that in the years 1871

---

*CLARK, J., did not sit.

and 1872, and thereafter, he was engaged in entering lands in Caldwell and Burke Counties, N. C., when Henry F. Bond, father of the defendant Louisa N. Bond, said his daughter had some $10,000 in bonds, the money on which would soon be available, and, as her agent, said Henry F. Bond agreed to advance the money necessary to take out certain grants. Plaintiff was also to contribute part of the expenses of surveys and certain services in selling said lands, which were to be repaid him; that plaintiff did make outlays and expenditures to the amount of $500 and more, and Henry Bond, as agent of his daughter, the defendant, advanced enough money to perfect and take out grants in fifty-two entries, being 18,000 acres of land, which grants were taken out in plaintiff's name, and are the lands referred to in the complaint; that after the grants were so taken out, said Henry F. Bond said his daughter would feel safer if the plaintiff would convey the lands to her, and by such conveyance the sale and transfer of the lands would be facilitated, and requested plaintiff to convey said lands to his daughter, Louisa N. Bond; that on such request the plaintiff did, in the latter part of 1875, or January, 1876, convey all of said lands to said Louisa N. Bond, under a contract and agreement in parol that said Louisa N. Bond should hold said land in trust to sell the same, and out of the proceeds, when sold, pay plaintiff for his services and expenses, and pay defendant Louisa N. Bond the moneys advanced by her agent in procuring the grants, and divide the residue equally between plaintiff and Louisa N. Bond; that said agreement was one of the inducements to the making of such deed; that Henry F. Bond died in 1881, and sometime after his death plaintiff, hearing a sale of some of the lands was about to be effected by Col. S. McD. Tate, one of the defendants, having a power of attorney from Louisa N. Bond, went to Morganton and demanded of Colonel Tate, agent of defendant Louisa, that he account for proceeds of sale under the contract and agree-

ment. Colonel Tate showed plaintiff his deed, and said he understood his principal, Louisa Bond, was absolute owner of the property; that he would write to her about it. This was the first time plaintiff was ever informed that his claim in the lands was disputed. And that defendant has failed to pay him anything on his claim. This demand was about a year before the sale.

Witness was shown the deed from himself to defendant Louisa Bond and the grants, the deed bearing date January 15, 1876, and said the deed was made at said time and included all the lands granted. Plaintiff testified further, on cross-examination, that the deed was signed as he intended, and everything was in it that the parties intended should be put in it, and that the contract and agreement as to the trust was in parol and at the time of the execution of the deed.

The Court, upon the evidence and the deed and record of grants, here intimated that plaintiff could not maintain his contention in the first issue, or set up the trust claimed, or engraft the same upon the deed by parol, in the absence of any allegation of fraud or mistake. In deference to this intimation the plaintiff suffered a judgment of nonsuit, and appealed.

*Messrs. M. Silver* and *F. H. Busbee,* for plaintiff.
*Mr. S J. Ervin,* for defendants.

SHEPHERD, J.: We entirely concur with the rulings of his Honor that the plaintiff could not have established any trust in the lands conveyed by him to the defendant. This is conceded by the plaintiff's counsel, and it is, therefore, needless to enter into the consideration of that question.

We are of opinion, however, that upon the pleadings and evidence, the plaintiff is entitled to an account of the proceeds of the sale of the land in order to ascertain the amount due him as the consideration of the conveyance, and that he may recover the same.

The enforcement of the alleged agreement, *after the sale of the land,* does not in any respect impinge upon the terms of the conveyance, but relates entirely to the payment of the consideration. It is true that the plaintiff could not have compelled the defendant to execute her agreement to sell the land, as there was no enforceable trust, and the agreement was within the statute of frauds, but this part of the agreement has been voluntarily performed, and the other part, not being within the statute, may now be enforced. The principle is illustrated by the following cases:

In *Hess* v. *Fox,* 10 Wend., 436, the plaintiff conveyed his equity of redemption to his mortgagee in consideration of the actual cancellation and discharge of the mortgage indebtedness and a promise to sell the land and pay the surplus, if any, to the plaintiff. The land was sold, and there being a surplus, the plaintiff recovered it in an action of *assumpsit.* SAVAGE, C. J., after stating that the agreement to sell could not have been enforced, said that "no question can arise as to the validity of the agreement to sell, that was performed, and the remaining part was to pay over money supported by the consideration of land conveyed to the promisor."

In *Massey* v. *Holland,* 3 Ired., 197, the plaintiff being indebted to the defendant, conveyed certain lands to him upon the understanding that he should sell the same, satisfy his claim and pay the surplus to the plaintiff. The land was sold and the plaintiff recovered the surplus in an action of *assumpsit.* The defendant objected to the introduction of parol testimony to prove the agreement, but it was held that it was not within the statute, the Court remarking that "the plaintiff has not brought his action upon the agreement. He treats the agreement as having been executed, and claims the money which in consequence of that agreement became due to him." See also Browne on Statute of Frauds, 117.

108—25

Still more directly in point is the case of *Michael* v. *Foil*, 100 N. C., 178. There "the contract for the sale of the land was in writing; the land itself was sold, but the agreement that if the mineral interest in the land should be sold during the life-time of the plaintiff he should have one-half of it, was not put in the writing."

The Court said: "If the contract of sale was made subject to this agreement, as an inducement to the contract, the agreement, though in parol, may be enforced. The agreement did not pass or purport to pass any interest in the land, and does not fall within the statute of frauds."

In addition to the authorities cited in the opinion in the foregoing case, we will add the case of *Miller* v. *Kendig*, 55 Iowa, 174, in which it was held that "a parol agreement by the grantee of land, that in case he sells the land for more than the price paid, one-half of the excess shall be paid to the grantor, does not create an interest in real estate within the statute of frauds." The Court, after stating that the agreement to sell could not be enforced, proceeds as follows: "The agreement entered into between the parties pertained merely to the purchase price. It was to be at least $1,650, and in a certain contingency more than that. The plaintiff shows that the contingency has happened." It was held that he was entitled to recover.

In *Trobridge* v. *Weatherbee*, 11 Allen. (Mass.) Rep., 361, it is said that "a parol promise to pay to another a portion of the profits made by a promisor on the purchase and sale of real estate is not within the statute of frauds and may be proved by parol." See also *Mehagan* v. *Mead*, 63 N. H., 130; *Sherrill* v. *Hagan*, 92 N. C., 345.

We have examined with great care the cases cited by the defendant's counsel, but in our opinion they do not shake the authority of *Michael* v. *Foil, supra*, sustained as it is by the general current of judicial decision. The principle there laid down is applicable to the present case. The plaintiff

here had the legal title to the land and conveyed it upon an apparently nominal consideration to the defendant. He testifies that the inducement to the making of such conveyance was the agreement that the defendant should sell the land, and when sold he was to be paid for his services and expenditures, and, after deducting the amount advanced by the defendant, he was to have one-half of the proceeds of the sale. We think that if the plaintiff can establish such an agreement he will be entitled to recover.

As the land was not sold until 1890, the plaintiff's cause of action did not accrue until then, and is, therefore, not barred by the statute of limitations. This defence was not seriously urged before us.

For the reasons given, we think there should be a new trial.

Error.