HENRY BAUCOM AND ALVIS BAUCOM v. FIRST NATIONAL BANK OF
    MONROE, INCORPORATED, TOWN OF BENTON HEIGHTS AND JOEL
    MYERS, JONAH WILLIAMS, J. WALTER HELMS, J. F. HELMS AND
    HOMER BAUCOM.
                        (Filed 4 January, 1933.)

1. **Frauds, Statute of B a—Agreement relating to paving assessments
   held not contract affecting lands, and statute of frauds did not
   apply.**

    Lot owners in an incorporated town paid assessments for improvements
    on abutting streets, and afterwards sold their lots by warranty deeds to
    purchasers. Thereafter the State Highway Commission adopted this street
    as a part of the State Highway system and under authority of statute
    the Commission paid the town the value of the street improvements for
    the benefit of those who had paid the assessment or who had obligated
    themselves therefor. The town paid to the purchasers of the lots their
    proportionate share of the funds, and the original owners brought action
    to recover the amount. The defendants offered evidence of a parol agree-
    ment between the original owners and the purchasers, executed con-
    temporaneously with the deeds, that should such reimbursement be made
    by the Highway Commission the amount should be paid to the purchasers:
    *Held*, the parol contemporaneous agreement did not pass, or purport to
    pass, any interest in land, and the statute of frauds is not applicable
    thereto, and testimony of the oral agreement was competent, the land
    trade being an executed contract.

2. **Parties A c—Parties joined by order of court held not interveners.**

    Where parties are joined in an action by order of court they are not
    interveners, and are not subject to the principles of law applicable to
    interveners.

CIVIL ACTION, before *Warlick, J.*, at February Term, 1932, of UNION.

The plaintiffs owned certain lots in the town of Benton Heights. Prior
to 1925, the town paved the street or road upon which the property of
plaintiffs fronted, and levied an assessment amounting to $857.94. The
plaintiffs paid said sum to the town. Thereafter the State Highway
Commission adopted this paved street or road as a part of the State
highway system, and it was rumored that the said Highway Commission
would repay to the property owners the sums which they had previously
paid to the town of Benton Heights for said improvements. On 14 May,
1925, plaintiffs agreed to convey to Walter Helms and Homer Baucom
said land, and executed and delivered a deed for 196 feet thereof to said
Helms and Baucom, and also, on the same date executed and delivered
a deed to Thomas C. Griffin for 146½ feet of said land. The grantees
in the deed of plaintiffs, to wit, Homer Baucom and Walter Helms,
conveyed certain portions of the land to other parties, who are defend-
ants in this suit. The agreement between the plaintiffs and Henry Bau-

com and J. Walter Helms, as narrated by said Helms, is substantially as follows: "There was an agreement between us and Mr. Baucom (plaintiff) whenever we purchased the land. He asked us $2,500 for the land, and I said, 'that is too much for the land,' and he said, 'Well, we have got $858.00 in paving,' and says, 'If you all will pay us $2,500 for the land you all can have the paving if it is ever paid back by the State, or if you sell it you can sell it to the parties you sell it to with the understanding they get it,' and that is the way we bought the land. We paid for the whole amount of land that they had over there, which was 412 feet less 50 feet that had already been sold to Homer Baucom before that." There was evidence that the defendants, Baucom and Helms, sold and conveyed portions of the land to other parties with the assurance that if the Highway Commission reimbursed the property owners for the amounts advanced in paving the street or road that the parties owning the land at the time of the repayment would be entitled thereto. There was also evidence to the contrary. The deeds were all warranty deeds and contained no mention or reference to the refund of the paving assessment.

Thereafter, the General Assembly of North Carolina enacted chapter 191, Private Laws, session 1927. This act in the preamble refers to "certain public spirited citizens of the town of Benton Heights," who obligated themselves "for the construction of a paved highway," etc., and section 1 of the act authorizes and directs the State Highway Commission "to pay over to the First National Bank of Monroe as treasurer of Union County from the allocated highway funds due Union County such amount as they may find to be the present value of the present paved highway. . . . And the said First National Bank of Monroe as treasurer of Union County is directed to disburse the sum so paid by the State Highway Commission to those citizens who pay or obligated themselves to pay for the construction of said paved highway, to be pro-rated among said citizens according to the amount so paid or obligated to be paid by them. The act went into effect 7 March, 1927. Thereafter, the First National Bank of Monroe received the money and paid the same to the town of Benton Heights, and the town of Benton Heights paid the money in controversy to the defendants, Myers, Williams, J. F. Helms, J. Walter Helms, and Homer Baucom.

Subsequently, on 21 August, 1931, the plaintiffs, who were the owners of the land at the time of the improvement, brought this suit against the First National Bank of Monroe, alleging that the money in controversy had been paid by the Highway Commission by authority of the act of the General Assembly above referred to, and that by virtue thereof the said bank was liable to them for said money, amounting to $706.43. The bank filed an answer admitting the receipt of the money, but alleged

that by virtue of order of the board of county commissioners of Union County it had turned the money over to the town of Benton Heights, and that said town had disbursed the same to the parties entitled thereto. The bank further alleged that if the plaintiffs ever owned any property facing on said paved highway, "that they had sold and transferred the same to parties unknown to this defendant and were no longer interested or entitled to any part of the funds paid to the First National Bank of Monroe as treasurer of Union County, . . . and that plaintiffs "were not the owners of the property and had made deed conveying all of their right, title, interest, and estate in said property to other parties." Thereupon, the bank made a motion that the town of Benton Heights and the defendants, Homer Baucom, J. F. Helms, Jonah Williams, J. Walter Helms and J. H. Myers, be made parties defendant. The motion of the bank having been granted and said defendants having been brought into court, filed answers. The town adopted the answer filed by the individual defendants as far as applicable. The individual defendants alleged, among other things, as a defense that the plaintiffs on 14 May, 1925, had sold the land to certain of the individual defendants and had agreed at the time of the sale that the amount expended by them for street paving, if the same should ever be refunded by the State, should belong to the grantees named in said deeds.

The following issues were submitted to the jury:

1. "Did the plaintiffs at the time of execution and delivery of deeds enter into a contemporaneous parol agreement with their grantees that any refunds on account of pavement should belong to the purchasers of the lands described in the deeds?"

2. "If not, in what amount is First National Bank indebted to plaintiffs?"

3. "Is plaintiffs' cause of action barred by the two-year statute of limitations?"

The jury answered the first issue "Yes," and did not answer the other issues.

From judgment upon the verdict plaintiffs appealed.

*W. O. Lemmond and H. B. Adams for plaintiffs.*
*Vann & Milliken, Love & Parker and John C. Sikes for defendants.*

BROGDEN, J. This is the case: The vendors conveyed certain land by warranty deed to the vendees and received from the latter the agreed price. The vendors at the time of the sale made an oral agreement with the vendees that if a certain sum of money theretofore paid by the vendors for paving a street or road abutting the property, was thereafter refunded by the State Highway Commission, in such event said money

should belong to the vendees or owners of the land at the time of the refund. The fact status, consequently produces the vital question of law, and that is: Was the oral agreement with respect to the paving money within the statute of frauds? The plaintiffs objected to all testimony tending to prove the oral agreement as aforesaid, and assigned the admission thereof by the trial judge for error.

A correct conclusion with respect to the applicability of the statute of frauds must be reached by determining whether the oral agreement was a land trade or a contract affecting the disposition of money not then in existence, but which the parties hoped would eventually come into existence by act of the General Assembly of North Carolina. Obviously, the land trade was a completed transaction. The parties had agreed upon the purchase price. The deeds were executed and delivered, and the purchase price paid by the vendees and accepted by the vendors. No further act was contemplated by either of the parties with reference to the land. It was a closed transaction. Indeed, the plaintiffs are not attacking the deeds or challenging in any manner the sale of the land. They are suing for money, and that alone. The principle of law applicable to the facts was stated in *Michael v. Foil,* 100 N. C., 178, 6 S. E., 264, where it is written: "If the contract of sale was made subject to this agreement, as an inducement to the contract, the agreement, though in parol, may be enforced. The agreement did not pass, or purport to pass, any interest in land, and does not fall within the statute of frauds." See *Sprague v. Bond,* 108 N. C., 382, 135 S. E., 143; *Buie v. Kennedy,* 164 N. C., 290, 80 S. E., 445; *Newby v. Realty Co.,* 182 N. C., 34, 108 S. E., 323; *Stack v. Stack,* 202 N. C., 461, 163 S. E., 589. Moreover, the statute of frauds does not apply to executed contracts, and the land trade disclosed by this appeal was an executed contract. *Brinkley v. Brinkley,* 128 N. C., 503, 39 S. E., 38; *Rogers v. Lumber Co.,* 154 N. C., 108, 69 S. E., 788; *Keith v. Kennedy,* 194 N. C., 784, 140 S. E., 721.

The plaintiffs rely upon *Hall v. Fisher,* 126 N. C., 205, 35 S. E., 425. The consideration for the agreement in the *Hall case* was the procurement of an easement. An easement is in itself an interest in land, and hence the principle announced in that case does not control the present appeal.

The plaintiffs insist that the defendants other than the First National Bank of Monroe were interveners, but the record discloses that they were brought into the case by order of court, and hence the principles of law with respect to the interveners is not applicable. McIntosh North Carolina Practice & Procedure, page 246, section 260; *Guthrie v. Durham,* 168 N. C., 573, 84 S. E., 859.

No error.