D. B. HOYLE v. J. A. BAGBY D/B/A J. A. BAGBY CONSTRUCTION COMPANY.

(Filed 20 January, 1961.)

**1. Appeal and Error § 7—**

A motion in the Supreme Court for leave to amend, as well as the proposed amendment, must be reduced to writing and filed in the Supreme Court, and a motion not in conformity with the rule will not be considered. Rule of Practice in the Supreme Court No. 36.

**2. Fraud § 8—**

Allegations to the effect that defendant induced plaintiff to do certain work under contract upon misrepresentation that defendant would pay the contract price when defendant was paid for the entire job by the owner, together with allegations of fact establishing that defendant was not paid anything by the owner subsequent to the promise until the day plaintiff had completed his contract, is insufficient to allege a cause of action for fraud in the absence of allegations that at the time the representation was made defendant had a then existing intent not to comply with his promise.

**3. Fraud § 3—**

A promise of performance in the future cannot constitute the basis for an action for fraud unless the promisor intended not to comply with the promise at the time the promise was made, and such misrepresentation of the fact of present intent was made with the purpose of inducing plaintiff to act to his detriment.

**4. Fraud § 8—**

The complaint in an action for fraud must set up with sufficient particularity the facts from which legal fraud arises or, when actual fraud is relied on, must specifically allege fraudulent intent and particularize the acts complained of as being fraudulent.

**5. Bankruptcy § 7—**

Exceptions to the discharge of debts under the bankruptcy law must be confined to those plainly expressed, and the exclusion of claims based on fraud is limited to claims for "money or property" thus obtained, and it has been held that such exclusion does not extend to claims for services obtained by fraud.

APPEAL by defendant from *Mallard, J.*, April 1960 Term, DURHAM Superior Court.

Civil action in which plaintiff seeks to recover for work done on a road construction project which the defendant was under contract to complete for Duke University. Duke University had agreed to pay the defendant $34,500 for the completed job. The defendant employed the plaintiff to furnish men and machines to help complete the project which was under way and partially completed when the plaintiff entered upon the work.

Plaintiff alleged he began work for defendant on December 17, 1957, and worked with tractor and bulldozer four or five days for which he was due $478. His next work began March 7, 1958, and continued until May 23, 1958. For work done and machines furnished he was due an additional $7,051, or $7,529 altogether. The plaintiff alleged "the date of payment for the services rendered was understood to be the day upon which the defendant received payment from Duke University."

The plaintiff further alleged that on December 20, 1957, the defendant collected $17,039.29, and on January 31, 1958, $3,654. "That between March 7, 1958, and May 23, 1958, this plaintiff inquired of the defendant about payment for services rendered and was assured that when he, the defendant, was paid for the job that the plaintiff would certainly get his money . . . and informed this plaintiff that he, the defendant, could not get his money until the job was inspected"; that the defendant "purposely misinformed the plaintiff about any monies that the defendant had already received on the job for the purpose of deceiving this plaintiff and to prevent the plaintiff from taking a lien on the job for services rendered, and to induce the plaintiff to continue work."

The plaintiff further alleged that the last day plaintiff worked, May 23, 1958, the defendant received from Duke University the sum of $10,380.20 and that $3,400 then remained unpaid. Claims have been filed with Duke University against the amount retained for approximately $12,000.

The defendant filed an answer, admitted the plaintiff performed the work with men and machines for which he had not been paid. The defendant denied any failure to keep any promises. By way of further answer and defense, the defendant set up as a plea in abatement, an order of discharge in bankruptcy entered on November 13, 1958, on a voluntary petition filed on September 11, 1958.

The court, by agreement, heard the defendant's plea in abatement and held: "That the complaint of the plaintiff states a cause of action

based upon fraud for obtaining money or moneys worth upon false representation that were known by the defendant to be false when he made them and that they were relied upon by the plaintiff to his detriment and as such is not a debt or claim as is discharged by the 'Discharge or Bankrupt.'"

From the order overruling the defendant's plea in abatement, he appealed.

*Williams and Zimmerman, for defendant, appellant.*
*Lester W. Owen, for plaintiff, appellee.*

HIGGINS, J.    Counsel for plaintiff, during the argument here, moved for leave to amend the complaint in order to amplify his allegations of fraud. However, neither the motion, nor the proposed amendment, was reduced to writing and filed in this Court as required by Rule 36, Rules of Practice in the Supreme Court, 221 N.C. 566. The motion and amendment are not in compliance with the rules and the Court cannot consider them.

The plaintiff alleged the defendant purposely misinformed him concerning the time he had been paid by Duke University and about the payments he had already received, "for the purpose of deceiving this plaintiff and to prevent the plaintiff from taking a lien on the job for services rendered, and to induce the plaintiff to continue work." We might be able to sustain plaintiff's allegation — more properly his conclusion — that the defendant had perpetrated a fraud on him but for the detailed allegations of the facts upon which he relies to sustain the charge of fraud. Here are the details alleged: Duke University contracted to pay the defendant $34,500 to complete a road contract. After the work was under way the defendant contracted to pay the plaintiff a stipulated price per hour to furnish men and machines to help the defendant complete the contract. Plaintiff worked four or five days beginning December 17, 1957, for which he was due $478. On December 20, the defendant drew $17,039.20 for work already done prior to the time plaintiff began. On January 31, 1958, the defendant received an additional $3,654. The plaintiff did not go back on the job until March 7, 1958, and he continued to work until May 23, 1958. On that date he was due $7,529. The plaintiff further alleged "that between the dates March 7, 1958, and May 23, 1958, this plaintiff inquired of the defendant about the payment for services rendered and was assured that when he, the defendant, was paid for the job that the plaintiff would certainly get his money." The plaintiff then alleges that on May 23, 1958, the defendant was

paid $10,380.20 and that a balance of $3,400 was still due by Duke University.

It is noted that the defendant had agreed to pay the plaintiff when the defendant collected from Duke; and that the basis of defendant's fraud is that the very day on which the plaintiff completed his work the defendant received more than $10,000 in payment from Duke and did not comply with his promise to pay the plaintiff when he collected. The plaintiff's own allegations show that between the date of the conversations on which the plaintiff relies (between March 7 and May 23) and the date he completed his work, the defendant did not receive one cent from Duke University.

The defendant's promise to pay when he collected was not breached until after the plaintiff had completed the work. The promise at the time made was for future fulfillment. It may have been made in good faith. The promise to pay was not based on any false statement of an existing fact. The complaint falls short of alleging fraud. "It is the general rule that an unfulfilled promise cannot be made the basis for an action for fraud." *Davis v. Davis*, 236 N. C. 208, 72 S.E. 2d 414; *Friend v. Talcott*, 228 U.S. 27, 28 L.R.A. (N.S.) 363; *Development Co. v. Bearden*, 227 N.C. 124, 41 S.E. 2d 85. In the *Bearden* case, this Court said: "Whatever may be the facts beyond the complaint, the pleading will be of no avail unless it sets up with sufficient particularity facts from which legal fraud arises or, where proof of actual fraud is necessary to relief, specifically alleges the fraud — that is, the fraudulent intent — and particularizes the acts complained of as fraudulent so that the court may judge whether they are at least *prima facie* of that character."

The plaintiff may be able to allege facts from which a court and jury may reasonably infer the defendant's intent not to pay for the work existed at the time he made the commitment to do so; but to be fraudulent the intent not to pay must have existed in the defendant's mind at the time he made the promise which induced the plaintiff to do the work. The promise to pay must have been made (1) with the present intent not to carry it out and (2) with the purpose to induce the plaintiff to do work for which the defendant did not intend to pay. *Davis v. Davis, supra; Williams v. Williams*, 220 N.C. 806, 18 S.E. 2d 364.

In overruling the defendant's plea in abatement, the superior court held: "The complaint of the plaintiff states a cause of action based upon fraud for obtaining money or moneys worth . . . and as such is not a debt or claim as is discharged by a 'Discharge of Bankrupt.'" We call attention to the wording of the exception in the Bankruptcy

Act: "A discharge in bankruptcy shall release a bankrupt from all his provable debts . . . except . . . (2) liabilities for obtaining money or property by false pretenses or false representations." The exclusion extends to money or property — not to money or money's worth.

"In view of the well-known purposes of the Bankrupt Law exceptions to the operation of a discharge thereunder should be confined to those plainly expressed; and while much might be said in favor of extending these to liabilities incurred for services obtained by fraud, the language of the Act does not go so far." *Gleason v. Thaw,* 236 U.S. 558; *Fidelity & Deposit Co. v. Arenz,* 290 U.S. 66.

The trial court's conclusion the complaint states a cause of action for fraud is not sustained. The order overruling the plea in abatement is reversed. However, the plaintiff, if so advised, may offer in the superior court the amendment to the complaint which he requested here. The plea in abatement will stand for hearing in the superior court if the plaintiff amends.

Reversed.