LAWRENCE EDWARD OVERSTREET, JR. AND WIFE, RITA PORTERFIELD OVERSTREET v. BROOKLAND, INCORPORATED

No. 809SC970

(Filed 16 June 1981)

1. **Deeds § 20.7— subdivision restrictive covenant — action against developer — insufficient evidence**

Plaintiffs' evidence was insufficient to be submitted to the jury on the issue of defendant subdivision developer's breach of a covenant restricting use of lots in the subdivision to residential purposes where the basis of plaintiffs' action was a third party's use of a subdivision lot, the restrictive covenants contained no provision imposing a duty upon defendant to enforce the restrictions on behalf of plaintiff against any other landowner in the subdivision, and there was no evidence of any use by defendant of other lots or parcels in the subdivision in violation of the covenants.

2. **Fraud § 12.1— failure to show misrepresentation of subsisting fact**

Plaintiffs' evidence was insufficient for the jury on the issue of defendant subdivision developer's fraud in the inducement of the sale of a residential lot to plaintiffs where it tended to show that defendant promised that a street in front of the lot sold to plaintiffs would remain a dead-end street and that no part of the subdivision would be used for nonresidential purposes, that defendant thereafter sold a lot to a third party which he knew the third party intended to use for access to adjoining property, and that the intended use of the lot would have the effect of making the street in front of plaintiffs' lot a through street, since plaintiffs' evidence failed to show that defendant misrepresented to them a subsisting fact in that their evidence failed to establish that, at the time defendant sold plaintiffs their lot, defendant had no intention of restricting the subdivision to residential use and no intention that the street in front of plaintiffs' lot would continue to be a dead-end street.

3. **Unfair Competition § 1— unfair trade practices in sale of subdivision lot — insufficient evidence**

Plaintiffs' evidence was insufficient for the jury on the issue of defendant subdivision developer's unfair and deceptive trade practices in the sale of a residential lot to plaintiffs where it tended to show only that defendant promised that a street in front of plaintiffs' lot would remain a dead-end street and that no part of the subdivision would be used for nonresidential purposes, that defendant thereafter sold a lot to a third party which it knew the third party intended to use for the nonresidential purpose of access to adjoining property, and that the intended use would have the effect of making the street in front of plaintiffs' lot a through street. G.S. 75-1.1.

4. **Frauds, Statute of § 6.1— promise to construct and maintain road**

Defendant's promise to construct and maintain a road in front of a residential lot sold to plaintiffs did not come within the Statute of Frauds.

APPEAL by plaintiffs from *Farmer, Judge.* Judgment entered 24 May 1980 in Superior Court, PERSON County. Heard in the Court of Appeals 9 April 1981.

Plaintiffs' original complaint contains allegations under the headings of First, Second, and Third Cause of Action. In their "First Cause of Action", plaintiffs allege that defendant owns a subdivision known as "Brookland Section A", as described in a plat recorded in the Person County Registry. All of the land in the subdivision is subject to and bound by restrictive and protective covenants recorded in the Person County Registry. Plaintiffs and defendant are bound by said covenants and the covenants provide that the land in the subdivision shall be used for residential purposes only. The covenants were placed on record on 14 June 1977. On 25 May 1978, defendant sold lot number nine in the subdivision to Harry Lee Oakley. Defendant violated the covenants in that it knew Oakley intended to use the property for access to adjoining property, defendant knew that Oakley's access road would create a nuisance and would be annoying to plaintiffs, and defendant knew that Oakley's intended use would violate the plan or scheme of development for the subdivision. Plaintiffs were damaged by defendant's violation of the covenants in that plaintiffs have been harassed and have had to put up with loud vehicles driving back and forth in front of their home at all hours of the day and night and plaintiffs cannot enjoy the planned quiet residential community protected by the covenants. Plaintiffs' home is located on a through road and not on a dead-end private drive as set out on the plat and as contemplated by the plan or scheme of development. Plaintiffs' home has not appreciated in value as it otherwise would have. These matters have damaged plaintiffs in the sum of $5,000.00.

In their "Second Cause of Action", plaintiffs incorporate the allegations set out in their First Cause, and additionally allege that plaintiffs will sustain irreparable harm, damage, and injury unless defendant is permanently restrained and enjoined from "selling property to buyer for forbidden purposes" and that plaintiffs have no adequate remedy at law to prevent the harm and damage which will continue to occur if defendant is "allowed to continue to sell property for purposes forbidden by the restrictive covenants."

In their "Third Cause of Action", plaintiffs incorporate the allegations set forth in their First Cause and additionally allege that defendant contracted with plaintiffs at the time of purchase and sale of lot number ten in the subdivision to provide a two-lane road "to and from" plaintiffs' home made with a "crush and run" base and a gravel surface, that defendant has failed and refused to finish the road according to the contract, and that the minimal cost of surfacing the road according to the contract would be $1,200.00.

Defendant answered admitting ownership of the subdivision, the existence and recording of the plat, the existence and recording of the covenants, the sale of the lot to Oakley, and denying all other essential allegations in the complaint. Following defendant's answer, plaintiffs were allowed to amend their complaint to set out a Fourth and Fifth Cause of Action.

In their "Fourth Cause of Action" plaintiffs incorporate the allegations set out in their First Cause of Action, and additionally allege that defendant represented the subdivision to be residential in nature and fully protected by residential restrictive covenants. Defendant represented that Brunswick Lane would be a residential street ending in front of plaintiffs' home. Defendant knew that Brunswick Lane was going to be used for farm traffic and had made an agreement with Harry Oakley or Frank Oakley, adjoining land owners and farmers, for the extension of Brunswick Lane and for its use as a thoroughfare and access to the Oakley property. The representations of defendant were false and known to be false by defendant when made. Plaintiffs reasonably relied on defendant's representations and bought lot number ten and invested in a home on the lot. Plaintiffs do not have a home located in a residential neighborhood on a dead-end street and have been damaged in the sum of $71,500.00.

In their "Fifth Cause of Action" plaintiffs incorporate the allegations set out in their First and Fourth Causes and additionally allege that defendant, by representing the subdivision to be protected by restrictive covenants and representing Brunswick Lane to be a dead-end residential lane when defendant had made a prior agreement for the use of Brunswick Lane as a farm road and thoroughfare or access road to the Oakley property, was engaging in unfair or deceptive trade practices in viola-

tion of G.S. 75-1.1, to plaintiffs' damage. Plaintiffs sought treble damages and attorney's fees.

Defendant answered the amendment by denial and motion to dismiss.

At trial, plaintiffs presented extensive evidence, which will be dealt with in the body of this opinion. At the close of plaintiffs' evidence, defendant moved for a directed verdict on all counts. Following argument of defendant's counsel on the motion for directed verdict, there ensued lengthy discussion between counsel for both parties and the trial judge. During this episode of the trial, the trial judge first ruled in defendant's favor on plaintiffs' Third Cause of Action, on the grounds that plaintiffs' complaint alleged an oral agreement to build and maintain the road, made prior to plaintiffs' purchase of the lot and that such an agreement would come within the statute of frauds. Plaintiffs then moved that they be allowed to amend their complaint to conform it to evidence produced at trial of a later written agreement. The trial judge denied this motion. The trial judge then ruled in defendant's favor on plaintiffs' Fourth and Fifth Causes of Action. Before ruling on the motion as to plaintiffs' First (and remaining) Cause of Action as to violation of the restrictive covenants, the trial judge stated that it was necessary to determine as a matter of law a question relating to the existence of an old public road near plaintiffs' property. At the request and suggestion of counsel for defendant, the trial judge heard the testimony of several witnesses offered by defendant on *voir dire* — *i.e.*, out of the presence of the jury — on the question of the existence of the old public road. Following the testimony of these witnesses, the trial judge indicated a ruling favorable to defendant. The judgment contains the following entry:

> [T]he Court having reserved its ruling on Defendant's Motion for directed verdict at the close of Plaintiff's [*sic*] evidence as to the remaining issues, and the Defendant having introduced evidence and renewed its Motion for directed verdict at the close of all the evidence as to the remaining issues, and the Court being of the opinion that the Motion should be granted;
>
> AND THE COURT SPECIFICALLY DETERMINING in the light of the evidence most favorable to the Plaintiff, all the evidence disclosed and the Court concludes as a matter of

law that there exists a public road across the lands of the Defendant and through the lands of the adjoining landowner, Frank Oakley; and that the said public road has not been proven abandoned. The Court further finds as a matter of law by the evidence in the light most favorable to the Plaintiff, that the Restrictive Covenants are not applicable to the public road and that this specific finding of fact and conclusion of the law is not intended as a complete set of findings of fact and conclusions of law inasmuch as the directed verdict granted herein is based on all evidence before the Court.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff take nothing from the Defendant and that this action be dismissed with prejudice at the cost of the Plaintiff.

From entry of the judgment, plaintiffs have appealed.

*Watson, King & Hofler, by Wilfred F. Drake and R. Hayes Hofler, III, for plaintiff appellants.*

*Ramsey, Hubbard & Galloway, by James E. Ramsey, for defendant appellee.*

WELLS, Judge.

This appeal presents questions as to whether plaintiffs' evidence was sufficient to go to the jury on any of four causes of action: one, on breach of residential subdivision restrictive covenants, two, on breach of a contract to construct and maintain a residential subdivision street, three, on fraud in the inducement of the sale and purchase of a residential lot, and four, on unfair and deceptive trade practices in selling a residential lot.

Plaintiffs' evidence, viewed in the light most favorable to plaintiffs and giving plaintiffs the benefit of every reasonable inference which can be drawn from it, *Home Products Corp. v. Motor Freight, Inc.*, 46 N.C. App. 276, 264 S.E. 2d 774 (1980), *disc. rev. denied,* 300 N.C. 556, 270 S.E. 2d 105 (1980), tends to show the following. Defendant, the owner of the Brookland Subdivision, sold plaintiffs lot number ten on 9 May 1977. Prior to and at the time of agreement to purchase, defendant represented to plaintiffs that the subdivision would be restricted to residential use only and that the land could be used for no other purpose. These restrictions were not included in plaintiffs' deed, but were later

entered into between defendant and plaintiffs, signed by plaintiffs and recorded on 12 August 1977. Before plaintiffs purchased their lot, plaintiff Lawrence Edward Overstreet went with defendant's agents to visit the property. To get to the property, they traveled along a state road for about 1/10 of a mile and then emerged onto an old farm path. Defendant's agents informed Overstreet that the old farm path was being used by the Oakleys to come onto the Brookland property to harvest crops, but that after the crops were out of the fields, the property would be restricted, no more farming would take place and the path would be closed off from the subdivision street so that Brunswick Lane would be a dead-end street. The restrictive covenants include a restriction that "[n]o lot shall be used except for residential purposes" and a provision that "[n]o noxious or offensive trade shall be carried on upon any lot, nor shall any other occupant of any portion of the premises undertake any activity which may be or become any annoyance or nuisance to the neighborhood." The restrictions also included a paragraph as follows:

> Enforcement. If the parties hereto or any of them or their heirs, successors or assigns shall violate or attempt to violate any of the covenants and restrictions herein set forth before June 15, 1997, it shall be lawful for any person or persons owning any other portions of the premises in said development or subdivision to promote any proceeding at law or in equity against the person or persons violating or attempting to violate any such covenants or restrictions, and either to prevent the violator from doing so or to recover damages or other dues for such violation.

After plaintiffs bought their lot, Mr. Overstreet met Harry Lee Oakley, who inquired if plaintiffs had bought lot number ten. When Overstreet replied in the affirmative, Oakley informed him that Oakley's father owned property beside lot ten, that they had a gate there and would like to continue to come through the property. Mr. Overstreet informed Oakley that defendant had agreed that Brunswick Lane would be closed off. Oakley was not satisfied with that, was still determined to come through the area, and intended to talk to defendant about the matter. Approximately three days after plaintiffs bought their lot, Oakley bulldozed a path from the Oakley farm across a corner of plaintiffs' lot into Brunswick Lane. Mr. Overstreet complained to defendant's

agents, who informed him that Oakley had not been given permission by them to come into Brunswick Lane. As Oakley continued to come through plaintiffs' lot, plaintiffs erected a blockade. Later, on 25 May 1978, Harry Lee Oakley purchased lot number nine in the subdivision and subsequently cut a roadway through lot nine to Brunswick Lane. Lot nine lies directly across Brunswick Lane from plaintiffs' lot. Oakley is using the path across lot nine as an access road to his farm property and continues to use Brunswick Lane for farm traffic. When Mr. Overstreet complained about this to defendant's agents, Overstreet was told by defendant's agents that defendant would agree to let Oakley come through the area and they would see how things worked out. Mr. Overstreet stated that he could not agree to these conditions and circumstances, whereupon defendant's agents told him that plaintiffs and Harry Lee Oakley would have to learn to get along.

Defendant orally represented to plaintiffs that it would cut a sixty foot right-of-way to plaintiffs' lot, and would properly ditch, gravel and maintain a road to plaintiffs' lot. After plaintiffs purchased their lot, defendant confirmed their promise to maintain the road in a letter to Home Savings and Loan Association, the lender from whom plaintiffs borrowed the funds to construct their residence. Defendant has not maintained the road as promised, and in bad weather, the road becomes practically impassable for automobile traffic.

[1] We first consider plaintiffs' cause of action for breach of the restrictive covenants. Restrictive convenants such as the ones under consideration here are servitudes imposed on the various lots or parcels of land in the subdivision and as such are treated as easements appendant or appurtenant to the lots or parcels within the subdivision. *Craven County v. Trust Co.*, 237 N.C. 502, 512, 75 S.E. 2d 620, 628 (1953); *Shipton v. Barfield,* 23 N.C. App. 58, 62, 208 S.E. 2d 210, 213, *cert. denied,* 286 N.C. 212, 209 S.E. 2d 316 (1974). The effect of such negative easements created by such covenants is that, in the legal sense, each lot owes to all the other lots in the subdivision the burden of observing the covenants and each of the lots is invested with the benefits imposed by the burdens upon the others. *Craven County v. Trust Co., supra.* The law treats each landowner as a promisor, promising to abide by the restrictions for the benefit of the other landowners in the sub-

division, giving them the right to sue *inter se*, but does not recognize a remedy against the subdivider unless he has expressly or impliedly undertaken responsibility for the enforcement of the various covenants. *Shipton v. Barfield, supra.* There are no provisions in the covenants under consideration here which impose a duty upon defendant to enforce them on behalf of plaintiffs against any other landowner in the subdivision. The evidence presented by plaintiffs shows no use by defendant of other lots or parcels in the subdivision in violation of the covenants. These circumstances compel us to conclude, and we so hold, that the trial court properly granted defendant's motion for a directed verdict as to plaintiffs' First and Second Causes of Action.

[2] We next reach plaintiffs' cause of action based upon defendant's alleged fraudulent acts or representations inducing plaintiffs to buy lot number ten. Plaintiffs' evidence shows that defendant represented to them — promised to them — that the subdivision would be subject to covenants restricting it to residential use, that Oakley's farming operation would not affect Brunswick Lane, that Brunswick Lane would be and remain a dead-end street, and that the old farm path would be closed off. Soon after plaintiffs purchased their lot, the Oakleys started using Brunswick Lane for farm equipment traffic. Harry Lee Oakley later approached Mr. Overstreet and told Overstreet that they (the Oakleys) would like to continue to come through the property. Mr. Overstreet informed Oakley that before plaintiffs had bought their property, defendant had agreed that "the road would be closed off". Overstreet testified that "Oakley was not satisfied with that, was still determined to come through the area, and said he would talk with the realtors", *i.e.*, the defendant's representatives. Soon thereafter, Oakley cut a path from the old farm road to Brunswick Lane. Oakley was in dispute with defendant about his rights to continue to use the old farm path, and about a year later, he purchased lot nine to use for a connector road between his property and Brunswick Lane. Before purchasing lot nine Oakley informed defendant that he would continue to drive on those portions of the old farm path which ran across lot nine. This evidence would establish facts from which a jury could reasonably infer that defendant promised that Brunswick Lane would remain a dead-end street, that no part of the subdivision would be used for non-residential purposes, and that at about a year after these

promises were made, defendant sold a lot to Oakley which they knew he intended to use for non-residential purposes, *Realty Co. v. Hobbs*, 261 N.C. 414, 135 S.E. 2d 30 (1964); *Franzle v. Waters*, 18 N.C. App. 371, 197 S.E. 2d 15 (1973), the intended use of which would have the effect of making Brunswick Lane a through street. It thus becomes clear that plaintiffs have not shown that defendant misrepresented to them a subsisting fact, as distinguished from a representation relating to future prospects. *Ragsdale v. Kennedy*, 286 N.C. 130, 139, 209 S.E. 2d 494, 500 (1974). Our Supreme Court has held that while the general rule is that mere unfulfilled promises cannot be made the basis of an action for fraud, if a promise is made fraudulently — that is, with no intention to carry it out — such is a misrepresentation of the state of the promisor's mind at the time of the promise, *i.e.*, a pre-existing material fact. *Williams v. Williams*, 220 N.C. 806, 810-811, 18 S.E. 2d 364, 366-67 (1942); *see also, Johnson v. Insurance Co.*, 300 N.C. 247, 255, 266 S.E. 2d 610, 616 (1980) and cases cited therein; *Hoyle v. Bagby*, 253 N.C. 778, 781, 117 S.E. 2d 760, 762 (1961); *Davis v. Davis*, 236 N.C. 208, 211, 72 S.E. 2d 414, 415 (1952). *Cf., Harding v. Insurance Co.*, 218 N.C. 129, 10 S.E. 2d 599 (1940); *Whitley v. O'Neal*, 5 N.C. App. 136, 168 S.E. 2d 6 (1969). Plaintiffs' evidence in this case does not establish facts upon which a jury could reasonably infer that at the time defendant sold plaintiffs their lot, defendant had no intent of restricting the subdivision to residential use and purpose or no intent that Brunswick Lane would be and continue to be a dead-end street. The trial judge properly granted defendant's motion for a directed verdict of this cause of action.

[3]   We find that our decision as to the issue of fraud in this case is substantially dispositive of plaintiffs' alleged cause of action based upon unfair or deceptive trade practices in violation of G.S. 75-1.1.[1] While our Supreme Court has held that to succeed under G.S. 75-1.1, it is not necessary for the plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception,

---

1. Methods of competition, acts and practices regulated; legislative policy. — (a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

plaintiff must, nevertheless, show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception. *Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981). A trade practice is actionable if it is unfair, and "[t]he concept of 'unfairness' is broader than and includes the concept of 'deception'." *Johnson v. Insurance Co., supra*, at 263, 266 S.E. 2d at 621. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller, supra*, at 548, 276 S.E. 2d at 403. We do not find that plaintiffs have shown that defendant's acts in this case meet any of these criteria, and therefore, we hold that the trial judge properly granted defendant's motion for a directed verdict on this cause of action.

[4] Finally, we consider plaintiffs' cause of action for breach of defendant's promise to properly construct and maintain a road to plaintiffs' lot. As indicated in the factual summary, the trial court dismissed this cause on the grounds that defendant's promise came within the statute of frauds,[2] that it was not in writing when plaintiffs purchased their lot, and that the written confirmation of the promise having been made subsequent to plaintiffs' purchase, it was a separate agreement which would not sustain the original oral agreement. We hold that the trial court erred in this aspect of the case. The pleadings disclose that plaintiffs alleged and defendant admitted that plaintiffs' deed contained a reference to the subdivision plat on which Brunswick Lane is shown as a street and that subdivision plat was duly recorded in the Person County Registry. Thus, plaintiffs obtained an easement in the streets shown on that plat leading to plaintiffs' lot, *Wofford v. Highway Commission*, 263 N.C. 677, 683, 140 S.E. 2d 376, 381 (1965), *cert. denied*, 382 U.S. 822, 86 S.Ct. 50, 15 L.Ed. 2d 67 (1965); *Realty Co. v. Hobbs, supra*, at 421, 135 S.E. 2d at 35-36, and it is clear that plaintiffs are not seeking through the promise

---

2. G.S. 22-2. Contract for sale of land; leases.—All contracts to sell or convey any lands, tenements or hereditaments, or any interest in or concerning them, and all leases and contracts for leasing land for the purpose of digging for gold or other minerals, or for mining generally, of whatever duration; and all other leases and contracts for leasing lands exceeding in duration three years from the making thereof, shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized.

as to maintenance of the road to establish or enforce an easement, which would of course fall within the statute of frauds, but are seeking only to enforce defendant's promise to construct and maintain the road, which does not involve a contract to sell or convey land or any interest in land. Defendant's promise to construct and maintain the road does not come within the statute of frauds. *See, Baucom v. Bank*, 203 N.C. 825, 167 S.E. 72 (1933). Plaintiffs' evidence was clearly sufficient to take this cause of action to the jury. On this cause, the judgment of the trial court allowing defendant's motion for a directed verdict is reversed. Our decision makes it unnecessary to reach plaintiffs' argument that the subsequent written memorandum (letter) was sufficient to meet the requirement of the statute of frauds.

Affirmed in part, reversed in part.

Judges VAUGHN and CLARK concur.