### WILLIAM A. BLOUNT *vs.* WILLIAM W. CARROWAY.

Where one acquires the legal title to land, by means of an undertaking with the party entitled to the equitable estate, that he will hold the estate subject to the equity; a refusal to carry out the undertaking is a breach of confidence, and on that ground the party is converted into a trustee;

Therefore, where a power of sale was given by a mortgagor to the mortgagee, in consideration of which the mortgagee agreed to convey a portion of the land embraced in the deed, to a trustee, for the benefit of the mortgagor's wife; *it was held,* that this contract did not come within the provisions of the statute of frauds, and that the mortgagee should be held a trustee, and bound to convey, according to the agreement. In such cases an agreement proved only by parol will not suffice, there must be facts *de hors.*

Where a party buys as agent of the mortgagee, as in this case, and with notice of the agreement, he will stand in the place of the mortgagee, and is affected by the same equities.

[*Cloninger* v. *Summit,* 2 Jones' Eq., cited and approved.]

Civil action to recover possession of a tract of land, tried before *Clarke, J.,* at Fall Term, 1871, of LENOIR Superior Court.

The complaint alleges, that the plaintiff was the owner of a certain tract of land in Lenoir county, describing the boundaries, and that defendant withholds possession, and demands

judgment for possession, and damages for withholding the same.

The defendant, William W. Carroway, answers :

I. That prior to 26th day of June, 1866, he was the owner in fee of the land ; that on that-day he mortgaged the same in fee to one John C. Washington, to secure certain debts recited in the deed, and that on the 14th day of December, 1867, he executed to said Washington an instrument authorizing him to sell under the mortgage.

II. That there were several executions against him in the hands of the sheriff of Lenoir, among which were several in favor of W. N. and W. F. Rowland, Administrators of E. B. Hilliard, issued from Nash Superior Court, and amounting to over $3,000 ; that Mary B. Carroway, wife of defendant, is the daughter of E. B. Hilliard, deceased, and one of the distributees of the estate of said Hilliard ; that her share in the said estate was her sole and separate property, one Lewis Hilliard being her trustee under a marriage contract entered into between her and the defendant.

III. That it was understood that no sale of the land could be made under the mortgage and executions, the same being forbidden by General Order No. 10, of the 2d Military District, dated in April 1867.

IV. That it was agreed between the defendant and John C. Washington, that defendant would execute a power of sale, and consent that the land be sold under the mortgage and executions, and that in consideration thereof, and the executions in favor of the Rowlands, Administrators, the said Washington would bid, or cause to be bid off, the said lands, and would settle in fee, to the sole and separate use of the said Mary, wife of the defendant, the dwelling house and outhouses and one hundred and fifty acres of the land, and that defendant should not be disturbed in the possession of the land thus to be settled ; that defendant carried out his agreement in good faith, and executed the power of sale and gave his consent to the sheriff to sell ; that on the 7th day of January, 1868, the land was sold

under the mortgage and executions by the sheriff, who was acting also as agent of the mortgagee ; that, at said sale, the plaintiff W. A. Blount, son-in-law of Washington, bid off the land at $6,600, not more than one-third of its value, which defendant thinks was owing to the fact that it was understood that the purchase was made partly for the benefit of defendant's wife.

V. Defendant alleges and believes that the said land was bid off by Blount, at the instance and for the benefit of Washington, in pursuance of the agreement aforesaid, and with a full knowledge of all the facts ; or, if he bid it off on his own account, it was with the knowledge and understanding that the agreement should be carried into effect.

VI. That in pursuance of the agreement, as defendant supposed, he remained in quiet possession of the premises and never heard of plaintiff's claim until January 1869.

VII. That the Rowland executions have not been paid, and that Washington and the plaintiff have utterly failed and refused to carry into effect the agreement aforesaid.

Wherefore defendant insists that plaintiff is a trustee for Mary B. Carroway, for the dwelling and outhouses and land specified, and demands judgments that plaintiff convey the same in fee to the said Hilliard in trust, &c.

Upon motion, Lewis Hilliard and Mary B. Carroway were made defendants.

Plaintiff filed a replication to the several articles of the answer.

The following issues were submitted to a jury :

I. Did John C. Washington agree to purchase and convey, or cause to be purchased and conveyed to Lewis Hilliard, trustee for Mrs. Mary B. Carroway, the land described in the answer of the defendant ?

II. Did Wm. A. Blount purchase the land at sheriff's sale as the agent of Washington ?

III. Did Wm. A. Blount have notice of the agreement to

convey said land to Hilliard, trustee as aforesaid, before he purchased at sheriff's sale ?

IV. Having said notice, did he assent thereto ?

V. Did Blount have notice of the agreement before he took a deed from Washington, and having said notice did he assent thereto ?

The jury found all the issues in favor of the defendant. Whereupon the Court declared Blount a trustee for Mary B. Carroway, and gave judgment that he convey the land specified to Lewis Hilliard, as trustee, for the sole and separate use of Mary B. Carroway.

From this judgment plaintiff appealed to the Supreme Court.

*Phillips & Merrimon*, and *Busbee & Busbee*, for plaintiff. *Smith & Strong*, for defendants.

PEARSON, C. J. The counter claim is not put on the footing of the specific performance of a contract, but, on the footing of a *constructive trust*, growing out of the connection between Washington and Carroway, as mortgagee and mortgagor, and their dealing in regard to the equity of redemption, and that Blount stands in the shoes of Washington.

The jury find that Blount purchased the land as agent of Washington—issue II, and that Blount had notice of the agreement by Washington to convey the land to Lewis Hilliard, as trustee for Mrs. Carroway—issue III.

So Blount stands in the shoes of Washington, and the case will be considered as if the counter claim was set up against Washington, Blount holding the legal title, subject to the equities between Washington and Mrs. Carroway. If Mrs. Carroway is entitled to the *locus in quo*, the plaintiff cannot recover; for he will be treated as if he had executed a deed to Hilliard, in trust for Mrs. Carroway—equity considering that to be done which ought to have been done.

A agrees, by parol, to sell to B an undivided third part of a

tract of land, for $425; the money is paid, B enters into pos-session, and the two occupy jointly for several years, erect a mill, and make other improvements. B acquires no title, for the contract of sale is void under the statute.

In these two supposed cases A and B are strangers, and had no prior connection or privity. In our case, Washington and Carroway were not strangers, but were connected as mortgagee and mortgagor, which created a privity. The question is, does that make a difference, and take the agreement, to have a specified part of the land conveyed for the separate use of the wife of Carroway, out of the operation of the statute, on the distinction between a contract to sell land and a case where a court of equity will convert the party taking the legal estate into a trustee, on the ground that otherwise the dealing would result in fraud, and an abuse of the confidence reposed.

The agreement between Washington and Carroway cannot be treated as *nudum pactum*, for it is supported by a valuable consideration, to-wit: the execution by Carroway of a power of sale, without which Washington could not have sold, so as to convey a clear title; for although he had the legal estate, and might convey it, still the purchaser would take subject to the equity of redemption. So it was for the interest of Washington to acquire a power to pass a clear title, without the ex-posure and delay incident to obtaining a decree of foreclosure. This is a valuable consideration, and takes the case out of the class of "nude pacts."

Washington held the legal estate to secure the mortgage debt. Carroway had the equity of redemption. An agreement is made that Washington may sell and pass a clear title, in consideration that he will provide that the purchaser shall con-vey, for the separate use of Mrs. Carroway, 150 acres of land. Accordingly the land is sold, Blount purchases for Washing-ton, and with notice of this dealing between Washington and Carroway. We have the question: is this a parol contract to *sell land*, or is it a case where a court of equity will convert

Blount into a trustee, and require him to convey the 150 acres to the separate use of Mrs. Carroway, as had been agreed on?

Besides the three modes of creating a use or trust by *consent of parties*, to-wit: 1, a deed of bargain and sale; 2, a covenant to stand seized; 3, a declaration of the use or trust, where the legal estate is passed by transmutation of possession, there is a fourth mode of creating a trust "*in invitum*," in which a court of equity, to prevent fraud, converts the party acquiring the legal title into a trustee, and requires him to convey the legal estate to the party entitled to the equity, on the ground that he cannot with a good conscience hold the legal estate. In such cases, as the Court acts on the ground that its interference is necessary to prevent fraud, the statute is out of the question, as the jurisdiction is assumed in furtherance of the policy of the statute.

A numerous class of cases, under this doctrine, grows out of the relation of guardian and ward, attorney and client, and other confidential relations, where the party acquiring the legal title is converted into a trustee, not on the ground of actual fraud, but because of the facility of practising it, and he is required to prove that the dealing is entirely fair, or else is converted into a trustee, and will be required to convey the legal title, being held as a security merely for the money actually advanced.

Another class of cases, equally numerous, is where a deed, absolute on its face, is held to be a mere security for the debt, and the party holding the legal title is converted into a trustee, and required to convey on payment of the debt.

In such cases, however, a mere parol agreement for redemption is not enough; *facts de hors* must be proved, inconsistent with the idea of an intention to make an absolute sale.

Another class of cases, although not so numerous, is where one acquires the legal title, by means of an undertaking with the party entitled to the equitable estate, that he will hold the estate subject to the equity. Here a refusal to carry out the

26

undertaking is a breach of the confidence reposed, and on that ground the party is converted into a trustee. *Cloninger* v. *Summit*, 2 Jones' Eq. 513, is an instance under this class. In such cases, an agreement proved only by parol will not suffice; there must be *facts de hors*. In the case of *Cloninger* v. *Summit*, "The plaintiff put the title bond in the control of the defendant, *without which special confidence he could not have acquired the title."*

Our case falls under this principle. Carroway executed a *power of sale* to Washington, without which *special confidence* he could not have made the sale. The title cannot be withheld from Mrs. Carroway without a breach of this special confidence.

No error.

PER CURIAM.                              Judgment affirmed.

Justice Rodman, being a relative of the plaintiff, did not sit in this case.