## B. J. McFARLAND v. Mrs. FLORA HARRINGTON.

(Filed 1 October, 1919.)

**1. Trusts—Parol Trusts—Statute of Frauds—Equity.**

The plaintiff and his two brothers were owners of an undivided half-interest, as tenants in common, of lands descended to them as heirs at law of their deceased father, the defendant and her two sisters owning the other one-half interest as his heirs. The plaintiff and his two brothers

McFarland *v.* Harrington.

mortgaged their one-half interest for the support of their sisters, the mortgage was foreclosed and the purchaser commenced proceedings for partition. There was evidence tending to show that during the pendency of the proceedings for partition it was agreed by parol between the purchaser and the parties to the present action that the plaintiff should acquire the half-interest that he and his two brothers had mortgaged upon his paying to the purchaser the principal and interest, etc., of the purchase price, the title should be made to the defendant to be held by her in trust for the plaintiff, and that this was accordingly done: *Held,* the transaction did not fall within the intent and meaning of the Statute of Frauds, and the defendant, having acquired the title by reason of her promise, was required in equity to perform it; and that the jury having, under proper instructions, found the facts to be according to the evidence, the parol trust in plaintiff's favor was a valid and enforceable one.

2. **Attorney and Client—Express Authority—Principal and Agent—Evidence —Burden of Proof.**

Where there is evidence tending to show that the attorneys of the parties to a suit to engraft a parol trust on the title to lands had direct or specific authority to act therein for their clients, distinct from any implied by the relationship of client and attorney, an instruction to the jury that the burden of proof was upon the plaintiff was a proper one.

3. **Trusts—Parol Trusts—Burden of Proof.**

The burden is on the plaintiff, in an action to engraft a parol trust upon the legal title to lands, to establish his contention by clear, strong and convincing proof.

Action tried before *Connor, J.,* and a jury, at May Term, 1919, of Lee.

Some time before the institution of this action the plaintiff, two brothers and three sisters, one of them the defendant, were tenants in common of a tract of land which they inherited from their father, and the plaintiff, with the three sisters and their mother, were living on the land, he being a young man at the time.

The plaintiff and his two brothers made a mortgage on their interest in the land to secure food and clothing for the defendant and other sisters, leaving the interest of the sisters unencumbered. The mother joined to bar dower, and has been dead for many years.

The plaintiff was unable to redeem his interest, and the one-half undivided interest (that of the three brothers) was sold under the mortgage and was acquired by J. A. McIver, through a third person who bought at the sale. The original interest of the defendant and her sisters is not in the controversy. Subsequently McIver brought a partition proceeding in the Superior Court of Lee County against the three sisters, including this defendant. The defendants in that proceeding denied the title of the petitioner, and the cotenancy, raising an issue of

fact, and the cause was transferred to the civil issue docket for trial, where it remained for several years without any action being taken in it.

In 1918 the defendant, Mrs. Harrington, employed an attorney to bring the case to a hearing, so that she could get her interest, one-sixth, out of it, stating that they had been defending the proceeding so that her brother, Jones McFarland (this plaintiff), could recover something; that she was still willing to do all she could for him. Later, the attorney and the plaintiff were brought together through Mrs. Harrington, and represented them both. He immediately sought to have this plaintiff made a party to the partition proceeding, but the petitioner resisting this, he failed. He then interviewed J. A. McIver, the petitioner, in the interest of McFarland, to secure a compromise, and McIver told him whatever his attorney did in the matter would be satisfactory. The attorney also testified that Mr. McIver told him he only wanted to come out without loss—get his money and interest back, and his attorney's fees, but wanted the original mortgagors, or such of them as desired, to get whatever advantage there was in it; that he searched for the mort-gagors, found that the widow and one of the brothers were dead, and the other brother, Malcolm (who had not remained on the farm with the mother and sisters), wanted "Jones," the plaintiff, "to have it."

The cause came on for trial, and plaintiff's attorney unsuccessfully renewed his motion to have B. J. McFarland made a party. The jury returned a verdict for the petitioner for his one-half interest in the land, it being agreed, however, that B. J. McFarland was to have McIver's interest upon payment of the stipulated amount.

It was agreed between the attorneys of McIver and plaintiff (neither of counsel in this case), representing their clients, that upon payment into court within a given time of this amount McFarland should have title to the property, and that a judgment should be drawn securing this result; but McFarland was not a party, and it was therefore agreed that if Mrs. Harrington would consent to take title in her name, she being a party and sister of McFarland, the judgment should be so drawn and she would reconvey to McFarland, this plaintiff. A draft of the judgment was made and shown to the defendant and explained to her, and she agreed, as plaintiff's attorney testified, to take and hold the title for this plaintiff and reconvey to him. The judgment was then signed, and the attorney delivered to her a copy.

The defendant denied, in her testimony, that she made any agreement about it, but admitted that she saw the judgment after it was signed, and testified that she knew nothing about the transaction before. Both plaintiff and defendant deposited the money with the clerk, where the deed was deposited by McIver, in accordance with the terms of the

judgment. The defendant got the deed, refused to convey to the plaintiff, and the plaintiff sued.

The following issue was submitted to the jury: "Did the defendant, Mrs. Flora Harrington, agree to take the title to the land described in the pleadings for the benefit of the plaintiff, B. J. McFarland, and to reconvey the same to him?" It was answered: "Yes."

Judgment for the plaintiff upon the verdict, and defendant appealed.

*Seawell & Milliken for plaintiff.*
*Williams & Williams for defendant.*

WALKER, J., after stating the facts as above: The only question of importance in this case is whether the defendant, Mrs. Harrington, at the time the judgment was drawn, and before or at the time the legal title passed to her, promised and agreed that she would accept the title upon the trust to hold it for her brother (as to the half interest in the land) until he could pay the stipulated amount of money to fully reimburse Mr. McIver, and then convey the half interest to the plaintiff. There was evidence to support the plaintiff's allegation of a trust, such as is above set forth, and it was fairly and correctly submitted to the jury. If such an agreement was made and she obtained the deed thereby, it created an enforceable trust in favor of the plaintiff. *Avery v. Stewart,* 136 N. C., 426. She would not have acquired the legal title except for the confidence reposed in her by the other parties that she would perform her part of the agreement, and the law declares it inequitable that she should be permitted longer to hold it in violation of her promise. She will not be allowed to keep the title and repudiate the promise. *Sykes v. Boone,* 132 N. C., 199; *Jones v. Jones,* 164 N. C., 320; *Allen v. Gooding,* 173 N. C., 93. In the last cited case the Chief Justice thus states the law, quoting from the authorities mentioned: "Where one party has by his promise to buy, hold, or dispose of real property for the benefit of another induced action or forbearance by reliance upon such promise, it would be a fraud that the promise should not be enforced. Bispham's Eq., sec. 218. When a party acquires property by conveyance or devise secured to himself under assurance that he will transfer the property to or hold and appropriate it for the use and benefit of another, a trust for the benefit of such other person is charged upon the property, not by reason merely of the oral promise, but because of the fact that by means of such promise he had induced the transfer of the property to himself," citing *Glass v. Hulbert,* 102 Mass., 39. This doctrine has been frequently affirmed by this Court before and since *Avery v. Stewart, supra,* was decided. Recent cases are *Rush v. McPherson,* 176 N. C., 562, citing *Cohn v. Chapman,* 62 N. C., 92; *Boone v. Lee,* 175 N. C.,

383, at p. 386, where it was said: "In one aspect of our case this is a parol express trust, not enforcible under the statute of frauds, but as it is a solemn declaration of one party that if the legal estate is conveyed to him he will hold it in trust for another, it would be fraudulent and unconscionable for him to acquire the legal title by this engagement to hold it for another and not comply with his promise, and therefore equity will enforce the trust, as the statute of frauds does not apply to such cases on account of the fraud and the trust created thereby," citing *Sykes v. Boone, supra; Avery v. Stewart, supra.*

There was not only evidence to establish this trust, but Mr. McIver afterwards expressly ratified what was done by his attorney, and was perfectly willing that the plaintiff should have the full benefit of the transaction. The evidence shows that he did not intend that the defendant should have the half of the land he had acquired through the purchaser at the sale, but that it should go either to all of the former owners of the half in controversy, or to any one of them who desired it. That was the view he took of it, but the material question is what the defendant agreed to do, and the jury, upon full evidence, have so found against her as to fasten a trust on the title she holds for the benefit of the plaintiff. This seems to us very plain from the record as we have construed it. There was no variance between the allegation and the proof. The complaint alleged a parol trust by agreement with Mrs. Harrington, in behalf of the plaintiff, as to the half of the land, and there is proof to show it. Mr. McIver wanted his money—the whole of it, and was willing that the plaintiff, as one of the original.owners and mortgagors, should have the land. He left the matter entirely to his attorney, who made such an agreement, through the plaintiff's attorney, with Mrs. Harrington, and it appears that Mr. McIver afterwards expressed his satisfaction with what had been done by the attorneys. The plaintiff's attorney stated to this defendant that he could get Mr. McIver's half interest for his client, the plaintiff, who was defendant's brother, and it had been suggested to him that he see her and ascertain if this was agreeable to her. She replied: "That is all right; anything on earth that is reasonable, let my brother get his interest in it," and after telling her that she would have to make a transfer or deed to him she said, "I will fix that at any time." She denied that she had assented to any such arrangement or that she had promised to convey the McIver one-half to her brother, but the jury have settled the facts, so it has been found that there was an agreement of all the parties to the settlement of the matter.

Some objection has been urged to the authority of the attorneys, but there is ample evidence of it, and that they kept within the limit of it.

This authority was an express one, and not to be implied merely from the fact of the attorneyship, as in the cases cited to us.

The remaining exceptions relate to prayers for instructions tendered by the defendant as to the authority of the attorneys, the burden of proof, and the quantum thereof. We have disposed of the question as to the attorneys' authority, and the judge charged fully and correctly as to the burden of proof, placing it squarely upon the plaintiff, and also as to the quantum of the evidence required to be adduced by him, when he told the jury that it must be clear, strong and convincing. The charge was singularly clear and comprehensive, and was exceedingly fair to the defendant.

We have searched the record diligently, and no error is to be found therein.

No error.