CATHERINE GROVES PEELE, GUARDIAN OF JOSEPH PEELE, AND CATH-
ERINE GROVES PEELE v. J. H. LEROY AND WIFE, GRACE C. LEROY.

(Filed 14 October, 1942.)

**1. Trusts §§ 7, 12—**

Plaintiffs, owning realty subject to a mortgage which they were unable
to pay, conveyed same to the *feme* defendant, who on the same day exe-
cuted, with her husband, an agreement in consideration of such convey-
ance, to save plaintiffs harmless on account of the said mortgage debt, by
paying installments, taxes, repairs, etc., and upon a sale of the property,
within seven years or at some other agreeable time, proceeds of sale to be
divided between plaintiffs and defendants, subject to certain adjustments.
*Held:* Upon suit to enforce a trust, error to sustain demurrer to complaint
as not stating a cause of action.

**2. Trusts §§ 1a, 1b—**

The principle that a trust may be created by a declaration contained in
a separate instrument, or in several instruments, other than the deed
conveying the legal title, provided they have sufficient relation to each
other and construed together evidence such trust, is generally recognized;
and a declaration of trust, in this State, may be oral.

APPEAL by plaintiffs from *Thompson, J.,* at Chambers in Elizabeth
City, N. C., 28 February, 1942. From PASQUOTANK.

The plaintiffs in this action, having executed a mortgage upon the
premises described in the documents below set out, and having difficulty
in preventing foreclosure thereupon, and being desirous of preserving
such equity as they might have in the premises, did, on 7 May, 1931,
convey to Grace C. LeRoy a certain parcel of land in Elizabeth City,
upon a stated consideration of "ten dollars and other valuable considera-
tions." On the same day the defendants J. H. LeRoy and Grace C.
LeRoy executed to the plaintiffs, grantors in that deed, an "agreement" .
concerning the lands, as follows:

"NORTH CAROLINA—PASQUOTANK COUNTY.

"THIS AGREEMENT, made this the 7th day of May, 1931, by and
between J. H. LeRoy, Jr. and wife, Grace C. LeRoy, hereinafter desig-
nated as the first parties, and Joseph Peele and wife, Catherine Groves
Peele, hereinafter designated as the second parties.

"WHEREAS, the second parties have this day conveyed to Grace C.
LeRoy certain property in Elizabeth City between Preyor Street and
Fairfax Avenue, in connection with which and as a part of the consid-
eration for said transfer the following covenants and agreements have
been made.

"Now, THEREFORE, this instrument WITNESSETH:

"That as a part of the consideration for said deed the first parties herein hereby covenant and agree to protect and save harmless the said second parties from any and all liability on account of the indebtedness secured by deed of trust to the Prudential Insurance Company, in the sum of Six Thousand ($6,000) Dollars; the cost of the insurance required in connection with said indebtedness; the taxes due Elizabeth City and Pasquotank County since the year 1929; and all repairs necessary to be made to the building on said property during the continuance of this agreement.

"It is understood and agreed that the property this day conveyed shall be sold for the best price obtainable at any time not less than three nor more than seven years from this day, or at such other time agreeable to the parties hereto, it being understood that the vacant lots may be sold at an earlier date if a reasonable price can be obtained and the parties hereto consent. From the proceeds of said sale there shall first be paid to the first parties all such sums as they have paid on the principal of the Six Thousand ($6,000) Dollar mortgage indebtedness together with annual interest thereon from the respective dates of payment at the rate of six per cent. Should any repairs become necessary because of fault of construction of the building the amounts paid out therefor shall be returned to the first parties. The remainder of the sale price shall be divided equally between the first parties and the second parties, the first parties jointly receiving fifty per cent thereof and the second parties jointly receiving fifty per cent thereof, but in no event shall the amount paid to the first parties exceed one thousand ($1,000) dollars. All sums over and above this amount shall be paid to the second parties.

"It is understood and agreed that, in the event the first parties become financially unable to pay said mortgage indebtedness, insurance, taxes, etc., they shall not be liable to the second parties because of said inability or because of the sale of said property under said deed of trust.

J. H. LeRoy, JR.   (Seal)

GRACE C. LeRoy   (Seal)"

The acknowledgment thereof is as follows:

"NORTH CAROLINA—PASQUOTANK COUNTY.

"PERSONALLY APPEARED before me this day J. H. LeRoy, Jr. and wife, Grace C. LeRoy, who acknowledged the due execution of the foregoing agreement for the purposes therein expressed.

"Witness my hand and notarial seal, this 8th day of May, 1931.

MARGUERITE LEIGH, Notary Public.

"My commission expires: January 19, 1933."

About 9 July, 1941, no sale of the land having been made, the plaintiffs took the matter up with the defendants, through an attorney, and demanded that the property be sold and the profits, if any, divided in accordance with their interpretation of the agreement. The plaintiffs, after some correspondence unsatisfactory to them, brought this action to enforce the agreement, complaining that defendants' delay in selling the property was a violation of the agreement, that the occupation of the property by defendants had become wrongful; demanded that a receiver be appointed and a sale be ordered by the court, that there be an accounting between plaintiffs and defendants, and that plaintiffs recover a reasonable rental for the premises, and have such other relief as the case may warrant.

The defendants demurred to the complaint as not stating a cause of action. On the hearing, the demurrer was sustained and plaintiffs appealed.

*John T. Manning, W. D. Pruden, and Egbert L. Haywood for plaintiffs, appellants.*

*John H. Hall and P. W. McMullan for defendants, appellees.*

SEAWELL, J. The principle that a trust may be created by a declaration contained in a separate instrument, or in several instruments, other than the deed conveying the legal title, provided they have sufficient relation to each other and construed together evidence such trust, is generally recognized. 65 C. J., p. 262, *et seq.*

Counsel for the defendants, appellees, do not dispute the proposition that the deed to Grace C. LeRoy and the agreement signed by her and her husband were simultaneously made and in law must be regarded as constituting the same transaction; but they do contend that, so considered, the agreement relates merely to the consideration to be paid for the land—or the proceeds of sale—and raises no enforceable trust between the parties affecting the land itself—citing *Michael v. Foil,* 100 N. C., 178, 6 S. E., 264; *Sprague v. Bond,* 108 N. C., 382, 13 S. E., 143; and *Bourne v. Sherrill,* 143 N. C., 381, 55 S. E., 799. Thus it was contended in the oral argument that if plaintiffs could state a cause of action at all based on the alleged transaction, it would necessarily be for a breach of contract sounding in damages, as to which the declaration, liberally construed, is equally defective. *Hawkins v. Land Bank,* 221 N. C., 73.

However, there are distinctions in fact and in legal principle between the cited cases and the case at bar which we think make them inapplicable as deciding authority in support of this contention. In *Michael v. Foil, supra,* and *Bourne v. Sherrill, supra,* the agreement, *in totidem verbis,* related to a division of proceeds or profits upon the sale of the

lands, if and when made. In *Sprague v. Bond, supra,* the oral agree-ment did purport to set up a trust requiring the lands to be sold and there was an agreement that after paying certain expenses the proceeds should be divided. That part of the agreement relating to the trust was held to be within the statute of frauds and unenforceable for that reason; but the part of the agreement relating to the division of the proceeds after the sale of the land (and on page 385 the expression "after the sale of the land" is written in italics) was held not to impinge upon the terms of the written conveyance, but to relate entirely to the pay-ment of the consideration, and not being within the statute of frauds, it was enforceable. The record does not disclose that any basis had been laid in the complaint for the engrafting of a parol trust upon the deed.

The agreement under consideration is in writing and is, therefore, not within the statute of frauds. The appellees contend, however, that if the agreement should be viewed as creating a trust, it must then necessarily reinvest the plaintiff grantors in the deed of conveyance with some right, title or interest in the property which had gone out of them by virtue of their conveyance, and that, therefore, the instrument is void for want of privy examination of Mrs. LeRoy. C. S., 997; *Warren v. Dail,* 170 N. C., 406, 87 S. E., 126. And they contend that *Sprague v. Bond, supra,* followed by *Bourne v. Sherrill, supra,* have that connota-tion. Compare C. S., 997, and C. S., 988.

However, these expressions in *Sprague v. Bond, supra,* and the refer-ence in *Bourne v. Sherrill, supra,* are *obiter dicta,* unnecessary to a decision in the case, since in each case the sale had been voluntarily made and the action related merely to a division of the proceeds. Had the question been squarely presented, there is no doubt that the Court would have given weight to the fact of simultaneous execution in har-mony with general authority on the subject and considered decisions of our own Court. *Brogden v. Gibson,* 165 N. C., 16, 80 S. E., 966; *Newby v. Realty Co.,* 182 N. C., 34, 108 S. E., 323; *Anderson v. Harrington,* 163 N. C., 140, 79 S. E., 426.

In *Brogden v. Gibson, supra,* it is pointed out that that part of the English statute of frauds which requires a declaration of trust to be in writing had never been enacted in North Carolina; ours does not include them in its prohibition; and furthermore, a proper interpretation of C. S., 988, confines the expression "contracts to sell or convey lands" to sale and purchase between the parties whereby one or the other acquires some interest in the land.

And in *Newby v. Realty Co.,* 182 N. C., 34, 108 S. E., 323, the Court observes under the situation there existing: "The plaintiffs have not contracted to sell or convey any lands to the defendants, nor have the defendants agreed to buy and pay for the same, nor *vice versa.*"

*Newby v. Realty Co., supra,* and *Brogden v. Gibson, supra,* are parallel in pointing out the distinction which exists between a contract to sell or convey lands, which is within the statute of frauds, and the establishment of a trust, which is not. In the first class, a suit would be for specific performance of a contract; in the second, for enforcement of a parol trust.

In *Anderson v. Harrington, supra,* where the deed was made to the defendant in accordance with an agreement that the timber upon the land should be cut and the net proceeds turned over to Harrington until the purchase price had been paid, and the land should then be sold and the proceeds divided between them, the Court sustained the enforcement of the trust, although in parol.

"This is not an action for specific performance of a contract in the sale of land, but one to establish a trust. One of the four methods of creating a trust is by contract, based upon valuable consideration, to stand seized to the use of or in trust for another. *Wood v. Cherry,* 73 N. C., 115.

"It is so well settled in this State that the statute of frauds, requiring a memorandum in writing in respect to the sale of land to be signed by the party charged, does not apply to the declaration of trusts, that it is a waste of time to discuss the question at this late day. *Riggs v. Swann,* 59 N. C., 118.

"At common law it was not necessary that a trust be declared in any particular mode. In England the statute requires that declarations of trust be evidenced and proved by some writing, but in this State there is no such requirement, and therefore the matter stands as at common law. *Riggs v. Swann,* 59 N. C., 118; *Shelton v. Shelton,* 58 N. C., 292."

Declarations of trust made simultaneously with the acceptance of a legal title, although not embodied therein, have not generally been regarded as requiring formal execution or acknowledgment unless that is required by statute, and here there is no statute directly requiring it and it is not inferentially required since its character as a conveyance is thus negatived. Such declarations of trust made contemporaneously with transmission of the title are uniformly enforced. *Blackburn v. Blackburn,* 109 N. C., 488, 489, 13 S. E., 937; *Pittman v. Pittman,* 107 N. C., 159, 12 S. E., 61. Says the Court in *Blackburn v. Blackburn, supra:*

"*A fortiori* will the Court give effect to such a contemporaneous declaration when made in writing under seal and for a good consideration. No particular form of words is necessary to establish such a trust. 'The intent is what the Court looks to.'"

The question might be different if the *feme* defendant had obtained her title from some source other than the plaintiffs or if some circum-

stance, whether of time or relation, might eradicate the plain fact that the documents were simultaneously executed with a purpose, the understanding of which can be found only in their joint interpretation. It cannot be conceded that the title came to rest in Mrs. LeRoy, unaffected by the condition of its acceptance as expressed in the contemporaneous agreement. To do so would be, in effect, to construe the documents separately. This would destroy the legal inferences flowing from their simultaneous execution—their factual relation as a written expression of a single oral treaty would be denied its effect in determining the intent and purpose of the parties.

We are of the opinion that, considering the documents together and as relating to the same transaction, the agreement executed by Mr. and Mrs. LeRoy was no more than a contemporaneous expression of the trust by which she held the legal title and not a reconveyance of any interest she held in the land, and it, therefore, required no privy examination.

It may be a serious question whether equity will interfere to force a sale where the contract assumes the existence of profits which the holder of the title may not be able to realize upon the sale, but that question is not now before us.

Giving the pleading a liberal construction, which the practice requires, we think there was error in sustaining the demurrer, and the judgment is
    Reversed.