## THOMAS H. ATKINSON v. MARY C. ATKINSON.

(Filed 18 April, 1945.)

**1. Contracts § 8—**

Where the subject of controversy is covered by exchanges in writing between the parties, manifesting no ambiguity which would require resort to extrinsic evidence, or consideration of disputed fact, the construction is for the court.

**2. Trusts § 14—**

A constructive trust, arising *ex maleficio, is* a remedial device, not referred to the intent of the parties, but imposed upon the wrongdoer *in invitum*, often contrary to the intent, to prevent the consummation of fraud or unconscionable practice.

**3. Equity § 3—**

In seeking equity a plaintiff must find his cause of action in the invasion of property rights, at which point equity takes hold and proceeds as far as it may, within the power and practice of the court, to restore the parties to the *status quo ante injuriam*.

**4. Trusts § 14—**

When a constructive trust is predicated on fraud in the acquisition of property, or upon fraud, actual or constructive, which, if found, the law will refer to such acquisition, the basis of jurisdiction is the continuance of the equitable interest of the aggrieved person in and to the property of which he has been fraudulently deprived. The fraudulent conduct must be substantial, tangible, and of definite import, and must strike at the root of the transaction.

**5. Trusts §§ 1b, 15—**

In appropriate cases a parol trust is imposed upon the legal title on an oral promise of grantee to hold in trust, made in contemplation of the conveyance or concurrently therewith, as a condition of the passing of the title and its acceptance by the grantee; and in some situations involving the violation of an established fiduciary relationship, equitable intervention may be referred to the fraud rather than to the enforcement of the parol promise *ex proprio vigore*, and may result in a constructive trust.

**6. Equity § 3—**

Equity acts *in personam* but it also acts in relation to the *res*.

**7. Trusts § 15—**

Speaking strictly of the theory of unperformed promises, and not of other conditions which might result in the creation of a constructive trust, it is manifest that a court of equity will not declare a constructive trust upon the nonperformance of an incidental promise made in connection with the purchase of land, which has no bearing upon the nature of the title or interest intended to be conveyed, although such a promise indeed may constitute a part of the consideration.

**8. Same—**

Upon a conveyance by plaintiff to defendant in consequence of an offer made and accepted, promises by defendant in the offer that plaintiff should have one-half of the net profits of the property and one-half of the net proceeds of timber cut from the land, are contractual in character and setting. Their maturity gives rise to money demands, for which there is an adequate remedy at law and which cannot be converted into an equitable cause of action.

**9. Pleadings § 3a—**

Recovery must be had upon the theory of the complaint, and the court cannot, *ex mero motu,* assert for the plaintiff a different cause of action.

**10. Husband and Wife §§ 12a, 12d—**

The husband, for the duration of an estate by the entirety, has both the ownership and the control of the property since in law, for that period, the rents and profits of the land belong to him.

**11. Contracts § 3: Vendor and Purchaser § 5a—**

Where an offer to sell necessitates or contemplates a further agreement of the parties in essential matters, the option is invalid.

**12. Contracts §§ 3, 4: Vendor and Purchaser § 5a: Husband and Wife § 12c—**

While an offer to sell realty remains unilateral and unaccepted, the person to whom the offer was made has no equity in the premises and a conveyance by the owner involves no breach of legal duty, and where a complete change of ownership meanwhile takes place, for example, through survivorship in an estate by the entireties, the option terminates.

**13. Mortgages §§ 24, 25—**

When the equity of redemption is conveyed by the mortgagor to the mortgagee, there is a presumption of fraud upon a showing of the facts.

**14. Same—**

Where an agreement between the parties, requiring the defendant to acquire or discharge plaintiff's mortgage as part consideration for the conveyance of the mortgaged premises by plaintiff to defendant, was made and completed before the deed was executed or the mortgage assigned, with no fiduciary relation of any sort between them, no fraud or oppression could have existed, and the acquisition of the mortgage *eo instante* extinguished the debt, and the relation of mortgagor and mortgagee never actually existed between the parties.

STACY, C. J., dissenting.

WINBORNE and DENNY, JJ., concur in dissent.

APPEAL by plaintiff from *Bone, J.,* at September Term, 1944, of JOHNSTON.

Plaintiff brought this suit against the defendant to enforce an alleged trust growing out of the transactions hereinafter related, and to compel her to reconvey to him the lands described in the complaint, and to account for profits during their occupancy. He also demanded a return of the personalty described in the complaint, or an accounting for its value.

The defendant denied that there was ever any trust relationship existing between Wade H. Atkinson, or herself, and the plaintiff with respect to either the lands or the personalty subject of the controversy.

Upon the hearing the trial judge, considering the propriety of an accounting to depend upon the other issues in the case, continued the prayer for an accounting and proceeded to trial upon the issues relating to the trust.

The facts in evidence are substantially as follows:

The plaintiff, Thomas H. Atkinson, and Dr. Wade H. Atkinson, husband of the defendant, were brothers. At the time of the transaction herein related, Thomas Atkinson was a resident of the State of Florida, and Dr. Wade Atkinson also resided outside the State. Thomas Atkinson owned a body of farm and timber land in Johnston County, North Carolina, which was the old Atkinson home place. The land was heavily mortgaged to the Atlantic Joint Stock Land Bank of Raleigh, North Carolina. Default having been made in payment of the installments due on the land and of the taxes due thereon, the bank had instituted proceedings to foreclose the mortgage.

Prior to his removal to Florida, the plaintiff had been engaged in the mercantile business in Selma, North Carolina, and had become financially embarrassed. Due to the failure of a business in Florida, and the fact that he had endorsed the notes of the concern heavily, there was imminent a judgment against him for about $50,000.00. His repeated efforts to refinance the loan with the Land Bank or to pay the installments due ended in failure, and he was unable to redeem the land. He had offered the land to his creditors for application on his debts, but in view of the encumbrance, they declined the offer. Plaintiff estimated the property to be worth $40,000.00.

Outside the mortgaged property, he had some other lands adjoining those under the lien, which were also a part of the "home place."

Under these circumstances, Wade H. Atkinson made a written proposal to the plaintiff, as follows:

"June 12—'32

"DEAR TOM:

"While in N. C. I learned of the mortgage closing on the old place. Judge Aycock said they would have trouble in serving papers on you & Mattie unless you accepted service etc. and also talked of the

final procedure on your personal effects. Also had a talk with Barden about the plantation & the stock etc. He shows activity & thrift along hay, grass and clover, stock too.

"You know my earning capacity is knocked into a cocked hat, and that Wade took a crack at it, and that I must go for another treatment in France. So under these adverse circumstances I have made an offer to take up the mortgage, or have it assigned over. If they accept, I have to borrow. Under these circumstances the old place would be worthless to me without the stock, feed & implements. If they foreclose the procedure will be attaching everything you own etc. and at the present prices the receiver or what not will take it all.

"So under the conditions, I am offering to have you & Mattie to make sale to me of all the personal belongings of feed, stock, implements, etc., provided I can secure the mortgage, also the land not included in the mortgage. For this you shall have ½ the net proceeds of the farm, mill, etc., each year. If the lumber can be sold you can come supt. sell, etc., having ½ of the profits. You shall have a welcome & free use of the place as a pleasure resort for yourself & family as long as it is in my possession. Further you may purchase the entire place mill & all any time you can & wish with a reasonable profit.

"I feel that I am undertaking a big thing at my expectancy, for I have to go slow & be so careful with my health, that it is not promising much real pleasure for me. I therefore must be as business as possible for Mary's sake.

"About the Little River Milling Co. I do not know that I would prefer it in a company or not. Would like to have you tell me about it. How much stock & who holds it? I think it best to have things in one's own name, however would like your version of it.

"I hated to see your store closed & things looking so depleted around Selma. Saw Earp only for a few minutes & talked but little to him. I heard May say, or some one told us his daughter had bought a farm somewhere near, and that he was working on it, fixing up etc. He has been selling fertilizer for someone. Saw Avery only a few minutes. He wanted to talk about the insurance due on the houses on the old place. I think he said there was none on the mill.

"Drop me a letter & tell me what you & Mattie think about this proposal.

"Love from us to you all.

Affect.

WADE."

The proposal was accepted, and Thomas H. Atkinson and his wife conveyed the property, including that under mortgage and the other

land referred to as unencumbered, together with the personalty described in the offer, in pursuance of the agreement. The deed made to Wade H. Atkinson and Mary C. Atkinson, his wife and the present defendant, conveyed an estate by the entirety, and the personalty was conveyed to Wade H. Atkinson by bill of sale. The bill of sale and the deed are both dated 1 July, 1932, but there is evidence that they were executed 20 July, 1932.

Dr. Atkinson procured an assignment of the mortgage to himself and wife 14 July, 1932. In this transaction he paid upon the mortgage liability $11,601.61, accumulated taxes of $1,286.99, with interest, which, under the Land Bank mortgage, had become a part of the principal debt, later satisfying other taxes, making the total taxes paid approximately $2,500. The mortgage was not canceled of record.

Following this transaction, Dr. Atkinson went into possession of the property and spent substantial sums in improving it, including some $6,000 in repairing and reconditioning the mill. He also paid to the plaintiff, in various checks, the sum of $8,377.58, representing one-half the gross receipts of timber cut upon the place.

Wade H. Atkinson died 14 November, 1942, and title to the lands in controversy was thereby vested in his wife, the present defendant, by survivorship.

The plaintiff testified that prior to bringing the suit he had demanded of the defendant that she reconvey the property to him, and account to him for the profits.

At the conclusion of the plaintiff's evidence, the defendant demurred and made a motion for judgment as of nonsuit, which was allowed. The plaintiff appealed.

*Smith, Leach & Anderson and Abell, Shephard & Wood for plaintiff, appellant.*

*Albert M. Noble, W. H. Lyon, and J. C. B. Ehringhaus for defendant, appellee.*

SEAWELL, J. This appeal, as argued, poses the single question whether there was error in taking the case from the jury and entering judgment as of nonsuit on defendant's demurrer to the evidence. G. S., 1-183.

There are, it seems to us, certain inconsistencies in the theories of recovery presented, to which attention will be called in due course. But since plaintiff was entitled to go to the jury upon any cause of action sufficiently stated in the complaint and supported by evidence, we have examined the record in that light.

The exchanges between the parties covering the subject in controversy are in writing, and manifest no ambiguity which would require resort

to extrinsic evidence, or the consideration of disputed fact. Their construction is, therefore, for the court. *Drake v. Asheville,* 194 N. C., 6, 138 S. E., 343.

By way of elimination, we observe that even had appellant laid the basis for such a claim in his complaint, he does not now contend that the written offer of Dr. Wade H. Atkinson, its acceptance, and the transfer of land and personalty made in pursuance thereof, as appearing in the evidence, constitute an express trust, or give rise to a resulting trust, as such trust is understood in this jurisdiction. In fact, there are provisions in the proposal and expressions in the deed which negative that theory. The appellant does contend that Dr. Atkinson and the defendant acquired title to the property in dispute, and that the defendant now retains it, under circumstances that should constrain the court to declare the defendant trustee of a constructive trust for his benefit, arising *ex maleficio.* Such a trust is a remedial device, not referred to the intent of the parties, but imposed upon the wrongdoer *in invitum,* often contrary to the intent, to prevent the consummation of the fraud or unconscionable practice. Pomeroy, Equity Jurisprudence, 5th Ed., 1044; *Lefkowitz v. Silver,* 182 N. C., 339, 109 S. E., 56. It is contended that since title to the property was conveyed to the wife by the entirety, she was a party or privy to the wrongful acquisition of the property by her husband, or at least took an interest in the land in dispute without consideration, and with notice of plaintiff's equity—an interest which later ripened into the sole title by virtue of her survivorship; and that she will be unjustly enriched if she is not compelled to make restitution with respect to the property thus acquired and held.

While the theory of recovery is definitely based on fraud, actual or constructive, fraud, in terms, is not alleged in the complaint. Counsel say that the facts upon which fraud is predicated are set out in the complaint, and no more is required. They regard as unique in this respect instances where the equity of redemption is conveyed by the mortgagor to the mortgagee, since in such case the law presumes fraud upon a showing of the facts. *Cole v. Boyd,* 175 N. C., 555, 95 S. E., 778; compare *Ghormley v. Hyatt,* 208 N. C., 478, 482, 181 S. E., 242; 19 Am. Jur., Equity, sec. 233. The validity of this contention may be questioned, particularly so with regard to other conduct of the parties outside of the suggested trust relation which appellant would have us consider as engendering inferences of fraud. However, the rationale of our decision does not require us to pass upon these questions of technical procedure.

The appellant rests his case on the following propositions: (a) That certain promises were made at the time the property was acquired, the failure or refusal to perform which must be held at least as constructively fraudulent, vitiating the transaction *ab initio;* (b) that Dr. Atkin-

son and wife, the defendant, acquired plaintiff's equity of redemption in the bulk of the lands transferred to them while the relation of mortgagor and mortgagees existed between them—a transaction presumably fraudulent on the part of the grantees and requiring the defendant to show that the transaction was free from fraud or oppression, and that the price paid was fair. *Cole v. Boyd, supra; McNeill v. McNeill,* 223 N. C., 178, 25 S. E. (2d), 615.

It is to be questioned whether the acquisition of the equity of redemption while the grantees held the Land Bank mortgage, if established in fact and made effective in legal principle, would not rather result in a situation foreign to the nature of a constructive trust, or at least inconsistent with the more summary remedy afforded by that device, serving merely to reactivate or restore the previously existing trust under the mortgage. We pass this for the moment to consider whether in the other respects mentioned the plaintiff's appeal is meritorious *vel non.*

The plaintiff asks that a constructive trust be declared to prevent the unjust enrichment of the defendant at his expense. Scott on Trusts, sec. 462; Bogert on Trusts (Hornbook), ch. 6, p. 194, sec. 55; Restatement, Trusts, sec. 1. Since the theory of unjust enrichment, with its broad implications, is so largely featured in the brief of appellant, we think it proper to say that an approach to the theory of constructive trusts via the doctrine of unjust enrichment should be made with caution, or at least with strict regard to the doctrinal limitations through which that subject angles back to beaten paths. The doctrine cannot be invoked, through the rather socialized connotations usually attending its expression, to broaden the basis of equity jurisdiction or to bring within its cognizance situations which have heretofore escaped the comprehension of its long recognized rules. As a matter of administration, courts are not, of course, concerned with formal classifications of trusts made by textwriters for convenience in treating the subject, so long as emphasis is permitted to remain on the factual situations out of which the trust arises or upon which it may be declared.

The plaintiff in a matter of this sort must find his cause of action in the invasion of a property right. Equity takes hold at that point, and proceeds as far as it may within the power and practice of the court to restore the parties to the *status quo ante injuriam.*

Not attempting in one impossible definition to put a fence around all instances where the court may, with propriety, declare a constructive trust, we think it safe to say that where it is predicated on fraud in the acquisition of property, or upon fraud, actual or constructive, which, if found, the law will refer to such acquisition, the basis of jurisdiction is the continuance of the equitable interest of the aggrieved person in and

to the property of which he has been fraudulently deprived—an interest which survives the fraud and persists despite the outward forms of legality under which it is held and under which the true ownership has been submerged.

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Judge Cardozo, in Beatty v. Guggenheim Exploration Co.,* 225 N. Y., 380, 386, 122 N. E., 378.

What are the circumstances which should arouse "the conscience of equity" and merit remedial action—their character, significance and pertinency—is the subject of anxious inquiry by the court, guided by precedent and established principles. Transactions which the law has regarded as the most solemn in which men may enter, the vast majority of which are honestly undertaken, cannot be lightly set aside upon an arbitrary or capricious view on the part of the chancellor that the proceeding was unfair. The fraudulent conduct which demands correction or frustration through equity must be substantial, tangible and of definite import, and must strike at the root of the transaction.

UNPERFORMED PROMISES: We think a preliminary statement with regard to the statute of frauds will clarify the discussion on this point and lead to a better understanding of some cases cited to us under misapprehension, we think, as to their significance—at least as to the nature of the promises with which this branch of equity is concerned. The seventh section of the English Statute of Frauds relating to the creation of trusts has not been enacted in this State. *Peele v. LeRoy,* 222 N. C., 123, 126, 127, 22 S. E. (2d), 244; *Anderson v. Harrington,* 163 N. C., 140, 79 S. E., 426; *Riggs v. Swann,* 59 N. C., 118. Here, in appropriate cases, a so-called parol trust is imposed upon the legal title upon an oral promise of the grantee to hold in trust, made in contemplation of the conveyance or concurrently therewith, as a condition of the passing of the title and its acceptance by the grantee. In some states of the Union, where the English law requiring the creation of a trust to be manifested in writing, or some substitute statute of a similar nature, is in force, it has been held that the fraud involved in the violation of the promise is sufficient to take the situation out of the statute of frauds and afford relief by the creation of a constructive trust; and in this State, in some situations involving the violation of an established fiduciary relationship, equitable intervention may be referred to the fraud rather than to enforcement of the parol promise *ex proprio vigore,* and may result in a constructive trust. *McNinch v. Trust Co.,* 183 N. C., 33, 110 S. E., 663. But no matter upon what principle the equity is worked out, the promises

involved are similar. The cases cited in appellant's brief, and scores of others of similar import, throw a distinguishing light upon the character of the promises with which this particular equity is concerned. Upon examination they will be found to refer uniformly to one kind of promise, although varying in form: a promise to hold the lands in trust or to preserve to the grantor, or other person, some estate in the lands conveyed inconsistent with the full beneficial interest of the holders of the legal title. *Peele v. LeRoy,* 222 N. C., 123; *Speight v. Trust Co.,* 209 N. C., 563; *Boyett v. Bank,* 204 N. C., 639; *McNinch v. Trust Co.,* 183 N. C., 33; *McFarland v. Harrington,* 178 N. C., 189; *Ballard v. Boyette,* 171 N. C., 24; *Brogden v. Gibson,* 165 N. C., 16; *Smiley v. Pearce,* 98 N. C., 185; *Burns v. McGregor,* 90 N. C., 222; *Blount v. Carroway,* 67 N. C., 396. See Pomeroy, Eq. Jur., sec. 1055. If distinguished from the other cited cases, *Burns v. McGregor, supra,* merely presents the familiar principle of equity that neither coverture nor infancy will serve as a shield or mask for the perpetration of fraud, or prevent equity from restoring the parties to the *status quo.*

Equity acts *in personam,* but it also acts in relation to the *res.* Speaking now strictly of the theory of unperformed promises, and not of other conditions which might result in the creation of a constructive trust, it is manifest that a court of equity will not declare a constructive trust upon the nonperformance of an incidental promise made in connection with the purchase of land, which has no bearing upon the nature of the title or interest intended to be conveyed, although such a promise indeed may constitute a part of the consideration.

Amongst the promises made by Dr. Atkinson in the preliminary agreement, the alleged nonperformance of which is presented by plaintiff as raising an inference of fraud, may be mentioned the promise to pay to plaintiff annually one-half the net proceeds of the farm and mill, to pay him one-half the profits of the timber cut from the lands, and the offer couched in the following terms: "Further you may purchase the entire place mill & all any time you can & wish with a reasonable profit."

These promises do not, in themselves, indicate that they are intended as conditions upon the passing of the full beneficial title by the deed subsequently to be executed, and which itself makes no reference to them. Even if we exclude from consideration the deed itself, no reasonable construction we can give to the letter of Dr. Atkinson containing his offer is consistent with the view that the grantor was to have any further equity in the subject of the conveyance, and there is no suggestion in them of a promise that the land should be held in trust for any such purpose.

Whatever the nature of the agreements brought about by these offers, and their implied acceptance, and however they may be enforced, and

against whom, if at all, the promises themselves are not of such a character that their breach will justify the court in declaring a constructive trust and thus, indirectly, make the forfeiture of the estate a sanction to their performance.

The plaintiff here is not suing for the enforcement of these promises, but asking that a constructive trust be declared because of their nonperformance, and that an accounting be had incident to that remedy.

We examine two of the promises relied upon as involving inferences of fraud upon which a constructive trust might be declared; the promise that the plaintiff should have one-half of the net profits of the farm and mill and the promise that he should have one-half the net proceeds of timber cut upon the premises. First, we observe these promises are contractual in character and in their setting not only presuppose, but for their performance directly depend upon the full enjoyment by the promisor of the beneficial estate in the granted lands. Their maturity gives rise to money demands which cannot be converted into equitable causes of action. In their legal aspect, there was and is an adequate remedy at law for their enforcement against the promisor as contractual obligations, or, for that matter, against any other person shown to be privy to them in the sense of legal liability. The plaintiff has, we think advisedly, refrained from suing to recover any amount due by reason of these promises or damages for their breach, since this would be inconsistent with the remedy to which he considers himself entitled; and the Court cannot, *ex mero motu,* assert for him such a cause of action upon the complaint as drawn, and as the parties are constituted.

The accounting demanded by plaintiff has no reference to any sum supposed to be due him by reason of these promises, but is strictly incidental to his theory of trust, which the enforcement of the promises would destroy.

These promises were made by Dr. Atkinson. There is no evidence connecting the defendant with them, except such inferences as might arise from her connection with the title. Whether they are promises running with the land we need not now stop to inquire, as it would have no bearing upon the case as now constituted in the complaint, or the theory on which it was tried in the court below. We do observe, however, that they were personal obligations of Dr. Atkinson, who, during the duration of the estate by entirety (which lasted almost to the beginning of this suit), had both the ownership and the control of the subject matter, since in law, during the existence of the estate by entirety, the rents and profits of the land belong to the husband. *Bynum v. Wicker,* 141 N. C., 95, 53 S. E., 478; *Greenville v. Gornto,* 161 N. C., 341, 77 S. E., 222. During that period this defendant raised no objection to the cutting of the timber or anything else her husband did in regard to

these promises.  Not only did the plaintiff neglect to make any demand
upon Dr. Atkinson with regard to the alleged breach of these promises
during his lifetime and his occupancy of the premises, which lasted for
upwards of ten years, but he failed to make any demand upon this
defendant with respect to them after the death of Dr. Atkinson and prior
to the institution of this suit.  The record fails to disclose any evidence
whatever that she had repudiated either of them, since their fulfillment,
if an obligation of hers at all, came under her control.  In other words,
she has had no opportunity either to affirm or "repudiate" the alleged
promises, and the central fact upon which plaintiff invokes the most
drastic penalty known to equity rests upon an assumption.

It is true plaintiff testified that defendant refused to convey to him
the lands and make an accounting—not an accounting for anything due
upon the agreement, but an accounting, as we have said, incident to his
theory of constructive trust.

Even in an action brought directly to enforce these promises, the court
would not assume, without evidence on the point, that there were net
profits from the farm and mill which remain unaccounted for, or that
the timber transaction referred to in the evidence was not, as it appears
to have been, complete.

We do not wish, however, to draw attention away from the fact that
the promises themselves are not of a character which equity associates
with fraud in the acquisition of the title, resulting in a constructive trust.

The offer made by Dr. Atkinson to permit the plaintiff to purchase
"the entire place mill & all" is, *in totidem verbis,* a simple option of pur-
chase and must stand or fall upon the law relating to that subject.  It
contemplates the purchase of the lands from the grantees as the beneficial
owners, and equity will not enforce it by declaring a trust.  In their
brief, counsel for the appellant described it as "not as definite and
explicit as it might be" and say that it will not serve as a basis for a suit
for specific performance.

It is true, construed as an option to purchase, it lacks many essentials
to validity.  Time is of the essence of such an offer.  Where no definite
term is set for the acceptance of the offer, it has been sometimes held to
be *nudum pactum.*  Jones' Cyc., Real Property, Vol. 1, sec. 130; *Bristo
v. Christin O. & G. Co.,* 139 La., 312, 71 S. E., 521.  Other authorities
say that it must then be accepted within a reasonable time.  *Smith v.
Baugham,* 156 Cal., 359, 104 Pac., 689; Jones, *supra,* 135, and cases
cited.  But all are agreed that where the offer necessitates or contem-
plates a further agreement of the parties in essential matters, the option
is invalid.  *Esselstine v. Bank,* 63 Mont., 461, 208 Pac., 910.  The offer
obviously falls within the latter class.  Certainly, neither the plaintiff
herein nor this Court could determine what was a reasonable profit, nor,

from any phraseology employed in the instrument, upon what that profit must be computed. The Court cannot make a contract for the parties.

But no equity arises out of the fact that it is too uncertain, vague and indefinite to be enforced; nor is any fraud to be imputed to the defendant because she declined to adopt the plaintiff's view of the whole transaction and convey to him the property upon repayment of the expenses incident to the acquisition of the Land Bank mortgage, plus a reasonable profit. The option, whatever its significance or imperfections, was not made a condition to the passing of the full beneficial interest in the premises to the grantees under plaintiff's deed, and this is sufficient to prevent its indirect enforcement upon the principle of constructive trust.

Also, it must be noted that apart from its vagueness and indefiniteness, while the offer remained unilateral and unaccepted by the plaintiff, the latter had no equity in the premises and the transfer of the property by Dr. Atkinson would involve no breach of legal duty. The same principle would apply where a complete change of ownership had meanwhile taken place—for example, through survivorship of the defendant in this case. It is also worthy of note that the plaintiff must have understood when he made the conveyance to the defendant and her husband by the entirety, such a change of ownership by virtue of the survivorship would terminate his option. Assuming, for argument only, that acceptance of the offer would have made a valid contract, the Court is constrained to hold that the plaintiff did not manifest any desire to purchase the property or accept the offer within what the law would recognize as reasonable time, and the defendant violated no duty by rejecting his demand.

RELATION OF MORTGAGOR AND MORTGAGEE: It is argued that a fiduciary relation existed between the plaintiff as mortgagor and the defendant and Dr. Atkinson as mortgagees when plaintiff executed and delivered to them his deed, raising a presumption of fraud on the part of the mortgagees which they have not rebutted. *Cole v. Boyd, supra.*

While the comparative dates of the execution of the deed and the assigning of the mortgage are in doubt, under the circumstances of this case priority is of little importance. The agreement between the plaintiff and his brother, requiring the latter to acquire or discharge the mortgage, was made and completed before the deed was executed or the mortgage assigned, and at a time when they were at "arms' length," with no fiduciary relation of any sort between them. Both the making of the deed and the acquisition of the mortgage were, therefore, agreed upon, when no fraud or oppression could have existed or have been practiced. Indeed, the acquisition of the mortgage, which between the parties meant extinction of the debt, was mentioned in the deed as part consideration. Under those circumstances, the legal presumption of fraud which, noth-

ing else appearing, arises when the mortgagor conveys to the mortgagee his equity of redemption would serve no purpose in law and does not arise, or, if it does, is rebutted by the very facts of the agreement.

Moreover, under our interpretation of the agreement between the parties, it contemplated a settlement of the mortgage debt by Dr. Atkinson, and under the agreement that was its effect. The relation of mortgagor and mortgagees never actually existed between the parties, because the debt of mortgagor to the Land Bank was extinguished *eo instante* with the assignment to the defendant and her husband, and the mortgage could not have been enforced by them. Notwithstanding the form of the transaction and the fact that the mortgage still remains uncanceled of record, there would have been an equitable estoppel if any attempt had been made to assert the Land Bank mortgage against plaintiff; and this was never at any time attempted. The estoppel is mutual.

If there should be a doubt as to the application of this principle, and we think there should be none, the plaintiff is unable successfully to assert fraud at this late date in view of the plea of the statute of limitation made by the defendant. The fraud of which he complains, if fraud it was, took place 14 July, 1932, according to plaintiff's evidence; the facts were well known to him, and he has given no reason which would operate to postpone the running of the statute.

We are not inadvertent to the testimony of Dr. Brooks to the effect that at about the time of the transaction, but upon a date he could not recall, Dr. Atkinson said that "Tom was about to lose the farm . . . that he did not want the farm to get out of the family, and that he was taking it over for the time being and holding it, hoping Tom would be able to redeem it." It is impossible to say whether this testimony relates, in point of time, to a contemplated or to an antecedent transaction. If it had been the choice of the plaintiff to rely on the establishment of an express trust, such evidence, if more definite in the particulars mentioned, might have been helpful in case it became necessary, by such evidence, to modify the written terms of the deed or of the preliminary agreement. That, however, is not the theory adopted by the plaintiff; nor did he ask for any reformation of his warranty deed on the ground of fraud or mistake. *Gaylord v. Gaylord,* 150 N. C., 222, 63 S. E., 1028. And there is no ambiguity in them which the testimony would be useful in explaining.

Upon these considerations, we are constrained to hold that the judgment of nonsuit was proper. It is

Affirmed.

STACY, C. J., dissenting: It is in evidence that the plaintiff conveyed his interest and equity in $50,000 worth of property to his brother and

the defendant on the terms set out in the letter of 12 June, 1932. Conceding that no fraud in the treaty has been shown and that the prayer of the complaint may be too broad, still it does not follow that the defendant is entitled to go without day and recover her costs.

The only consideration moving to the plaintiff was that mentioned in the letter of 12 June, 1932, to wit: "For this you shall have ½ the net proceeds of the farm, mill, etc., each year. If the lumber can be sold you can come supt. sell, etc., having ½ the profits. . . . Further you may purchase the entire place mill & all any time you can & wish with a reasonable profit."

Was the "old place," therefore, to be held for the joint benefit of both parties, with the right of the plaintiff at any time he could and wished to purchase the *entire* place, or his brother's interest therein, at a reasonable profit? *Lutz v. Hoyle,* 167 N. C., 632, 83 S. E., 749; *Sykes v. Boone,* 132 N. C., 199, 43 S. E., 645. The plaintiff so understood it, and upon this confidence the conveyance was made. No other consideration passed. *Brogden v. Gibson,* 165 N. C., 16, 80 S. E., 966; *Avery v. Stewart,* 136 N. C., 426, 48 S. E., 775. Such, also, was the understanding of plaintiff's brother. In a letter dated 2 May, 1942, he expressed regret that he had overlooked plaintiff was "to have a hand in the sale of the lumber, trees, etc."; apologized for inadvertently proceeding in disregard of his rights, and said: "You may come up right now, if you wish, and take charge of the works." *Cunningham v. Long,* 186 N. C., 526, 120 S. E., 81.

In any event, as against a nonsuit, would not the plaintiff be entitled to an accounting for one-half the annual net proceeds from the grantee in possession? *Sandlin v. Yancey,* 224 N. C., 519. Equity shapes its decrees to fit the facts. *McNinch v. Trust Co.,* 183 N. C., 33, 110 S. E., 663. Because the plaintiff has asked for a whole loaf is no reason why he should be denied half a loaf, or even a few crumbs. Neither the form of the action nor the prayer of the complaint is a bar to a lesser recovery. McIntosh on Procedure, 423. However, the plaintiff is not reduced to this extremity.

Nor is plaintiff's grantorship in the deed fatal to the case. *Justice v. Sherard,* 197 N. C., 237, 148 S. E., 241. The terms are in writing, and they furnish the consideration for the transaction. *Anderson v. Harrington,* 163 N. C., 140, 79 S. E., 426; *Shelton v. Shelton,* 58 N. C., 292. The deed itself affords some evidence of the trust. In the warranty is the expression: "that the same is free and clear from all encumbrances except as is made a part of the consideration herein." The cases of *Jones v. Jones,* 164 N. C., 320, 80 S. E., 430, and *Gaylord v. Gaylord,* 150 N. C., 222, 63 S. E., 1028, are inapposite. See *Allen v. Gooding,* 173 N. C., 93, 91 S. E., 694.

The plaintiff's brother never repudiated the terms of the conveyance during his lifetime. He remitted plaintiff's one-half "division" of the timber sales from time to time, the last remittance being on 2 October, 1942, only a few days before his death. Indeed, had he lived, the matter would have been settled without "any outsider coming into the controversy" according to one of his last letters.

Can the defendant, who takes as grantee in the same deed, successfully claim sole seizin as survivor and repudiate the conditions on which the deed was acquired? *Oil Co. v. Baars,* 224 N. C., 612; *Ballard v. Boyette,* 171 N. C., 24, 86 S. E., 175; *Burns v. McGregor,* 90 N. C., 222; *Blount v. Carroway,* 67 N. C., 396. It is of no consequence that she did not sign the letter of 12 June, 1932. *Holden v. Strickland,* 116 N. C., 185, 21 S. E., 684. Where a conveyance is made on consideration of a confidence, equity will enforce the confidence against the grantee in the conveyance or against one in privity with the grantee. *McFarland v. Harrington,* 178 N. C., 189, 100 S. E., 257; *Cobb v. Edwards,* 117 N. C., 244, 23 S. E., 241; *Owens v. Williams,* 130 N. C., 165, 41 S. E., 93; *Lamb v. Pigford,* 54 N. C., 196; *Brogden v. Gibson, supra,* and cases there cited.

The action readily survives the plea of the statute of limitations. The defendant repudiated the terms of the agreement in 1943—so admitted in the answer—which gave rise to this suit for declaration and impression of trust and for an accounting. Not until such repudiation was the aid of equity invoked or needed. *Peele v. LeRoy,* 222 N. C., 123, 22 S. E. (2d), 244. Moreover, the defendant pleads the 10-year, the 7-year and the 3-year statute of limitations, which within itself is a repudiation of the agreement.

My vote is for a reversal of the judgment of nonsuit.

WINBORNE and DENNY, JJ., concur in dissent.